*FEE PAID*
*RELATED DDJS*

Randee Grassini
_____
NAME

238-6
_____
PRISON IDENTIFICATION/BOOKING NO.

Coalinga State Hospital, P.O. Box 5003, Coalinga CA 9321
_____
ADDRESS OR PLACE OF CONFINEMENT

Note:    It is your responsibility to notify the Clerk of Court in writing of any
         change of address. If represented by an attorney, provide his name,
         address, telephone and facsimile numbers, and e-mail address.

FILED
CLERK, U.S. DISTRICT COURT

MAY 3 0 2023

CENTRAL DISTRICT OF CALIFORNIA
BY *EEE*    DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

RANDEE GRASSINI
_____

_____
FULL NAME (Include name under which you were convicted )
                                    Petitioner,

v.

BRANDON PRICE, Executive Dir. Coalinga State
Hospital, et al.
_____

_____
NAME OF WARDEN, SUPERINTENDENT, JAILOR OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER
                                    Respondent.

CASE NUMBER:

CV *LACV23-04257-DOC(SHK)*
To be supplied by the Clerk of the United States District Court

☐ _____ AMENDED

**PETITION FOR WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY**
28 U.S.C. § 2254

PLACE/COUNTY OF CONVICTION _____
PREVIOUSLY FILED, RELATED CASES IN THIS DISTRICT COURT
(List by case number )
CV _____
CV _____

## INSTRUCTIONS - PLEASE READ CAREFULLY

1.    To use this form, you must be a person who either is currently serving a sentence under a judgment against you in a California state court, or will be serving a sentence in the future under a judgment against you in a California state court. You are asking for relief from the conviction and/or the sentence. This form is your petition for relief.

2.    In this petition, you may challenge the judgment entered by only one California state court. If you want to challenge the judgment entered by a different California state court, you must file a separate petition.

3.    Make sure the form is typed or neatly handwritten. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

4.    Answer all the questions. You do not need to cite case law, but you do need to state the federal legal theory and operative facts in support of each ground. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a legal brief or arguments, you may attach a separate memorandum.

5.    You must include in this petition all the grounds for relief from the conviction and/or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

6.    You must pay a fee of $5.00. If the fee is paid, your petition will be filed. If you cannot afford the fee, you may ask to proceed *in forma pauperis* (as a poor person). To do that, you must fill out and sign the declaration of the last two pages of the form. Also, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account at the institution. If your prison account exceeds $25.00, you must pay the filing fee.

7.    When you have completed the form, send the original and two copies to the following address:

          Clerk of the United States District Court for the Central District of California
          United States Courthouse
          ATTN: Intake/Docket Section
          312 North Spring Street
          Los Angeles, California 90012

PLEASE COMPLETE THE FOLLOWING: (*Check appropriate number*)

This petition concerns:

1.  ☐ a conviction and/or sentence.
2.  ☐ prison discipline.
3.  ☐ a parole problem.
4.  ☑ other.

## PETITION

1.  Venue

    a.  Place of detention  Coalinga State Hospital, Coalinga CA

    b.  Place of conviction and sentence  Los Angeles County Superior Court, Los Angeles CA

2.  Conviction on which the petition is based *(a separate petition must be filed for each conviction being attacked)*.

    a.  Nature of offenses involved *(include all counts)* :  Not applicable; civil detention special proceedings

    b.  Penal or other code section or sections:  Welfare and Institutions Code Section 6605/6608

    c.  Case number:  ZM011411

    d.  Date of conviction:  Not applicable

    e.  Date of sentence:  Not applicable

    f.  Length of sentence on each count:  Not applicable

    g.  Plea *(check one)*:

        ☐ Not guilty

        ☐ Guilty

        ☐ Nolo contendere

    h.  Kind of trial *(check one)*:

        ☐ Jury

        ☐ Judge only

3.  Did you appeal to the California Court of Appeal from the judgment of conviction?    ☑ Yes  ☐ No

    If so, give the following information for your appeal *(and attach a copy of the Court of Appeal decision if available)*:

    a.  Case number:  B314992

    b.  Grounds raised *(list each)*:

        (1)  Please see accompanying opinion Court of Appeal Second District-Division Two: "Attachment A"

        (2)

    (3) _____

    (4) _____

    (5) _____

    (6) _____

c.  Date of decision: July 28, 2022 (As modified August 16, 2022 "Attachment B".)

d.  Result _____

_____


4.  If you did appeal, did you also file a Petition for Review with the California Supreme Court of the Court of Appeal decision?  ☑Yes   ☐No

If so give the following information *(and attach copies of the Petition for Review and the Supreme Court ruling if available)*:

a.  Case number: S276169

b.  Grounds raised *(list each)*:

    (1)  Same as those presented in petition for review to California Supreme Court: Attachments "C" and "D"

    (2) _____

    (3) _____

    (4) _____

    (5) _____

    (6) _____

c.  Date of decision: October 19, 2022 (Attachments "E" and "F".)

d.  Result _____

_____


5.  If you did not appeal:

a.  State your reasons Not applicable _____

_____

_____

_____

b.  Did you seek permission to file a late appeal?  ☐Yes  ☐No


6.  Have you previously filed any habeas petitions in any state court with respect to this judgment of conviction?

☐ Yes   ☑ No

If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a.  (1) Name of court: /

    (2) Case number: _____

    (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

      (a) _____

      (b) _____

      (c) _____

      (d) _____

      (e) _____

      (f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?    ☐ Yes   ☐ No

b.   (1) Name of court: / _____

    (2) Case number: _____

    (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

    (4) Grounds raised *(list each)*:

      (a) _____

      (b) _____

      (c) _____

      (d) _____

      (e) _____

      (f) _____

    (5) Date of decision: _____

    (6) Result _____

_____

    (7) Was an evidentiary hearing held?    ☐ Yes   ☐ No

c.   (1) Name of court: / _____

    (2) Case number: _____

    (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

    (4) Grounds raised *(list each)*:

      (a) _____

      (b) _____

      (c) _____

      (d) _____

      (e) _____

      (f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?    ☐ Yes ☐ No

7. Did you file a petition for certiorari in the United States Supreme Court?    ☐ Yes    ☑ No

    If yes, answer the following:

    (1) Docket or case number (if you know): _____

    (2) Result: _____

    _____

    (3) Date of result (if you know): _____

    (4) Citation to the case (if you know): _____

8. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than five grounds. Summarize briefly the facts supporting each ground. For example, if you are claiming ineffective assistance of counsel, you must state facts specifically setting forth what your attorney did or failed to do.

    CAUTION:    *Exhaustion Requirement*: In order to proceed in federal court, you must ordinarily first exhaust your state court remedies with respect to each ground on which you are requesting relief from the federal court. This means that, prior to seeking relief from the federal court, you first must present all of your grounds to the California Supreme Court.

    a.  Ground one: Same as those presented in Petitions for Review presented below; Attachments "C" and "D".

_____

    (1) Supporting FACTS: Same as those presented in Petitions for Review presented below; Attachments "C" and

_____

_____

_____

_____

    (2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☑ Yes    ☐ No

    (3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☑ Yes    ☐ No

    (4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☑ No

    b.  Ground two: _____

_____

    (1) Supporting FACTS: _____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☐ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☐ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☐ No

c.  Ground three: _____

_____

(1) Supporting FACTS: _____

_____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☐ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☐ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☐ No

d.  Ground four: _____

_____

(1) Supporting FACTS: _____

_____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☐ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☐ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☐ No

e.  Ground five: _____

_____

(1) Supporting FACTS: _____

_____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☐ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☐ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☐ No

9. If any of the grounds listed in paragraph 7 were not previously presented to the California Supreme Court, state briefly which grounds were not presented, and give your reasons:  Not applicable

10. Have you previously filed any habeas petitions in any federal court with respect to this judgment of conviction?
☐ Yes    ☑ No

If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a.  (1) Name of court: /

(2) Case number:

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*:

(4) Grounds raised *(list each)*:

(a)

(b)

(c)

(d)

(e)

(f)

(5) Date of decision:

(6) Result

(7) Was an evidentiary hearing held?    ☐ Yes ☐ No

b.  (1) Name of court: /

(2) Case number:

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*:

(4) Grounds raised *(list each)*:

(a)

(b)

(c)

(d)

(e)

(f)

(5) Date of decision:

(6) Result _____

_____

(7) Was an evidentiary hearing held?    ☐ Yes ☐ No

11. Do you have any petitions now pending (i.e., filed but not yet decided) in any state or federal court with respect to this judgment of conviction?    ☐ Yes    ☑ No

If so, give the following information *(and attach a copy of the petition if available)*:

(1) Name of court: / _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

12. Are you presently represented by counsel?    ☐ Yes ☑ No

If so, provide name, address and telephone number: _____

_____

_____

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding,

Not applicable
_____
*Signature of Attorney (if any)*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on ___5_/_26_/_23___    _____
Date    *Signature of Petitioner*

Filed 7/28/22

## CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B314992 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. ZM014741 & ZM011411) |
| v. | |
| FRANKLIN PEYTON et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Robert S. Harrison, Judge. Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant Franklin Peyton.

" Attachment A "

Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant Randee Grassini.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle, Viet H. Nguyen, and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Franklin Peyton (Peyton) and Randee Grassini (Grassini) (collectively, petitioners) have been civilly committed under our State's Sexually Violent Predator Act (the Act) (Welf. & Inst. Code, §§ 6600 et seq.).[1]  A person committed under the Act may be *unconditionally discharged* (if they no longer meet the definition of a "sexually violent predator" (SVP)) (§ 6604.9, subd. (d)), or *conditionally released* into the community under supervision of the Director of State Hospitals (the Director) (if they still meet the definition of a "sexually violent predator," but the community can be "adequately protect[ed]" because they are being supervised and treated) (*ibid.*; § 6608, subd. (g)).  If the Director's annual psychological evaluation of an SVP indicates that they no longer meet the SVP definition, the SVP may directly petition for unconditional discharge.  (§ 6604.9, subds. (d) & (f).)  But what if there is no such finding by the Director's evaluating psychologist?  May the SVP still directly petition for unconditional discharge, or must the SVP instead follow the usual, two-step process for obtaining unconditional discharge— that is, by seeking conditional release for a year and then

---

1     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

petitioning for unconditional discharge (§ 6608, subd. (m))?  Our colleagues in *People v. Smith* (2022) 75 Cal.App.5th 332, 336, 344 (*Smith 2022*) held that the Act does not authorize an SVP to directly petition for unconditional discharge without a favorable evaluation from the Director, and that this construction of the Act did not deny an SVP due process.  We agree with *Smith*'s statutory and constitutional holdings, and publish to add further arguments supporting this conclusion as well as to respond to additional points raised by the petitioners in this case.  We accordingly affirm.

## FACTS AND PROCEDURAL BACKGROUND

I.    **Underlying Criminal Conduct**

    A.    *Peyton*

Peyton was born in May 1947.

In 1986, he pled guilty in a California court to 11 counts of lewd and lascivious acts.  (Pen. Code, § 288, subd. (a)).  These counts grew out of Peyton's sexual molestation of children, in 1983 and 1984, who were between the ages of 5 and 11 and who had been entrusted to the care of Peyton's then-wife, who often babysat for friends and neighbors.  Peyton was sentenced to prison for 26 years.

Also in 1986, Peyton was convicted of three counts of sexual assault on a child in a Colorado court.  These counts grew out of Peyton's sexual molestation of three children who were 7 and 8 years old.  He was sentenced to prison for 16 years, to be served concurrently with his California sentence.

Peyton completed his criminal sentence and was transferred to a California mental health facility in September 2005.

### B.    *Grassini*

Grassini was born in December 1954.

In 1976, Grassini was convicted in a Nevada court of gross lewdness and anal intercourse with a 9-year-old child. He was sentenced to six years in prison.

In 1987, Grassini pled no contest in a California court to 12 counts of lewd and lascivious acts. The counts grew out of Grassini's conduct with three children between the ages of 4 and 12. He was sentenced to 26 years in state prison.

Grassini completed his criminal sentence and was transferred to a California mental health facility in 2001.

## II.    SVP Commitment Proceedings

### A.    *Peyton*

In June 2009, the People filed a petition to commit Peyton as an SVP under the Act.

In August 2015, Peyton admitted the petition's allegations over his counsel's objection, and, on the basis of that admission, was found to be an SVP and committed to the Director's custody.

Peyton has thereafter refused all treatment.

The Director conducted a psychological evaluation of Peyton every year between 2016 and 2020, and each of those evaluations concluded that Peyton was not suitable for unconditional discharge or conditional release. In light of these conclusions, the trial court continued Peyton's commitment as an SVP every year.

### B.    *Grassini*

In 1999, the People filed a petition to commit Grassini as an SVP under the Act. In 2001, a jury found the petition true, and Grassini was committed to the care of the Department of State Hospitals for a two-year commitment.

In March 2007, the People filed a petition to recommit Grassini under the Act. The matter proceeded to a three-day bench trial in January 2015. The trial court ruled that Grassini still qualified as an SVP, and recommitted him to the Director's custody.

The Director conducted a psychological evaluation of Grassini every year between 2016 and 2020, and each of those evaluations concluded that Grassini was not suitable for unconditional discharge or conditional release. In light of these conclusions, the trial court continued Grassini's commitment as an SVP every year.

### C.    *Marriage*

In May 2014, while living in the same mental health facility, Peyton and Grassini married.

### III.    Petitioners' Motion for Unconditional Discharge

In March 2021, petitioners filed a joint petition directly seeking unconditional discharge. To their petition, they attached four psychological evaluations—two opining that Peyton no longer met the SVP definition and two opining that Grassini no longer did.[2] Petitioners thereafter filed a supplemental petition arguing that denying them the right to directly petition for unconditional discharge violated due process.

While this petition was pending, the Director conducted its annual psychological evaluation of Peyton for 2021, which concluded that he was not suitable for unconditional discharge or conditional release.

---

2    One of the two reports on Grassini was from a psychologist who had opined that Grassini had not met the SVP definition when she evaluated him back in 2014.

The People opposed the joint petition.

At a July 2021 hearing, the trial court denied the joint petition insofar as it requested unconditional discharge. The court reasoned that "[a] petition for an *unconditional* discharge may only be made when the [D]irector . . . authorizes such a petition . . . or at least one year after the SVP committee has been on a conditional release." Because no authorization from the Director had been shown, the court denied the petition for unconditional discharge but, with petitioners' consent, construed it as a petition for conditional release.[3]

## IV.  Appeal

Petitioners filed this timely appeal of the denial of their joint petition for unconditional discharge.

## DISCUSSION

Petitioners argue that the trial court erred in denying their joint petition for unconditional discharge. In examining these arguments, we must interpret the Act, interpret the due process clause, and apply our legal determinations to undisputed facts; our review is accordingly de novo. (*Lopez v. Ledesma* (2022) 12 Cal.5th 848, 857 [statutory interpretation]; *California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 934 [constitutional interpretation]; *Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 912 [application of law to undisputed facts].) Before addressing the merits of petitioners' arguments, we start by providing an overview of the Act.

## I.  The Act

The purpose of the Act is twofold. The "primary" objective of the Act is to "protect the public from 'a small but extremely

---

3     The petition for conditional release was set for hearing later in 2021, and is not part of this appeal.

dangerous group of sexually violent predators . . .'" who are
"mentally ill." (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1192
(*Hurtado*), quoting Stats. 1995, ch. 763, § 1; *People v. Otto* (2001)
26 Cal.4th 200, 214 (*Otto*); *State Dept. of State Hospitals v.
Superior Court* (2015) 61 Cal.4th 339, 344 (*State Dept.*).  A
secondary objective is "to provide mental health treatment for
their [mental] disorders." (*State Dept.*, at p. 344.)

### A.    *Initial commitment as an SVP*

#### 1.    *Screening for possible SVP status*

When an inmate is nearing the end of his or her prison
term and may qualify as an SVP, the State Department of State
Hospitals (the Department) must "evaluate" that inmate "in
accordance with a standardized assessment protocol . . . to
determine whether the [inmate] is [an SVP]" as defined by the
Act; if the Department so determines, it must ask the People to
file a petition to have the inmate formally declared an SVP under
the Act.  (§§ 6601, subds. (a), (c) & (h)(1).)

#### 2.    *Formal proceedings to determine SVP status*

If the People elect to file a petition to have the inmate
declared an SVP, the trial court conducts two proceedings.

First, the court holds a "probable cause hearing," the goal of
which (and as its name suggests) is to "determine whether there
is probable cause to believe that" the inmate *may be* an SVP.  (§
6602, subd. (a).)  Second, if the court determines that probable
cause so exists, the court conducts a trial on the question of
whether the inmate *is* an SVP.  At this trial, the People bear the
burden of proving SVF status to a jury beyond a reasonable
doubt.  (§§ 6603, subds. (a) & (b), 6604.)

For purposes of both proceedings, an inmate qualifies as an
SVP if (1) the inmate "has been convicted of a sexually violent

offense against one or more victims," (2) the inmate "has a diagnosed mental disorder that makes [him or her] a danger to the health and safety of others," and (3) the mental disorder makes it "likely" that the inmate "will engage in future predatory acts of sexually violent criminal behavior if released from custody." (§ 6600; *People v. Jackson* (2022) 75 Cal.App.5th 1, 7-8 (*Jackson*).) In proving the third element, "'likely' . . . does not mean more likely than not; instead, the standard of likelihood is met 'when "the person presents a *substantial danger*, that is a *serious and well-founded risk*, that he or she will commit such crimes if free in the community.""" (*People v. Shazier* (2014) 60 Cal.4th 109, 126, italics in original.)

        3.    *Civil commitment*

    If at the trial an inmate is found to be an SVP, he or she is civilly committed to the Department's custody "for an indeterminate term" "for appropriate treatment and confinement in a secure facility." (§§ 6604, 6606, subd. (a) [obligating Department to provide treatment for the SVP's "diagnosed mental disorder"].) Before the voters passed Proposition 83 in 2006, the maximum term of commitment had been two years, although the People still had the option of filing a new petition and again establishing at trial that the inmate was an SVP beyond a reasonable doubt. (*People v. McKee* (2010) 47 Cal.4th 1172, 1183-1184 (*McKee*).)

    **B.**    ***Terminating commitment as an SVP***

    While an SVP is civilly committed, the SVP must be evaluated by a "professionally qualified person" "at least once every year" to assess (1) whether they "currently meet[] the [SVP] definition," and if they no longer do, whether the SVP "should . . . be considered for unconditional discharge," and (2) whether they

are suitable for "conditional release to a less restrictive
alternative." (§ 6604.9, subds. (a), (b) & (d).)  The Director is
bound by the evaluator's recommendation and has no discretion
to take a different position.  (*People v. Landau* (2011) 199
Cal.App.4th 31, 37-39 (*Landau 2011*); *People v. Smith* (2013) 212
Cal.App.4th 1394, 1399, fn. 2 (*Smith 2013*).)

    Because the standards and procedures for unconditional
discharge and conditional release differ, we examine each in more
detail.  We start with conditional release.

    1.   *Conditional release*

    Under the Act, an SVP is suitable for conditional release to
a less restrictive alternative (typically, placement in the
community rather than the secure facility where he or she has
been housed as an SVP) if he or she is no longer "a danger to the
health and safety of others" because it is not "likely that he or she
will engage in sexually violent criminal behavior due to his or her
diagnosed mental disorder if under the supervision and
treatment in the community." (§ 6608, subd. (g); see also § 6607,
subd. (a); *People v. McCloud* (2021) 63 Cal.App.5th 1, 9-10
(*McCloud*).)

    The applicable procedures and standards for assessing
whether conditional release is appropriate vary, depending on the
findings of the Department's annual evaluation.

    If the Department's annual evaluation indicates that the
SVP is suitable for conditional release because such release is "in
the best interest" of the SVP and "conditions can be imposed that
adequately protect the community," then the Director or the SVP
may file a petition for conditional release under section 6608.  (§§
6604.9, subds. (d) & (e) [authorizing Director to file], 6608, subd.
(a) [authorizing SVP to file].)  In light of the Director's pro-

9

conditional release evaluation, the SVP is presumptively entitled to conditional release and *the State* bears the burden of showing, by a preponderance of the evidence, that "conditional release is not appropriate." (§ 6608, subd. (k); *McCloud, supra,* 63 Cal.App.5th at pp. 9-10.)[4]

By contrast, if the Department's annual evaluation indicates that the SVP is *not* suitable for conditional release, the SVP may nonetheless file a petition under section 6608. (§ 6608, subd. (a).) In this scenario, the trial court must obtain the

---

[4]    Under the November 2006 version of the Act, an SVP with a recommendation in favor of conditional release could alternatively seek that release under section 6605 as well. (*Smith 2013, supra,* 212 Cal.App.4th at p. 1404 [so holding].) Under that version of the Act, section 6605, subdivision (b) required the Director, upon giving the SVP a favorable recommendation for conditional release, to "authorize" the SVP "to petition the court for conditional release . . . or for an unconditional discharge." (Former § 6605, subd. (b) (2006).) Viewing the statute as "ambiguous" as to whether an SVP in this circumstance could proceed under other subdivisions of section 6605, *Smith 2013* construed that language to so allow and thereby give an SVP in this circumstance the option of proceeding under section 6608 *or* under section 6605. (*Smith 2013,* at pp. 1402-1404.) The current version of the Act deleted the 2006 version of subdivision (b) of section 6605, and, as noted in the text, replaced it with section 6604.9, subdivision (e), which more definitively directs an SVP with a favorable recommendation to "petition using the procedures in section 6608." We reject petitioners' argument that the current version was meant merely to "reorganize" the Act without making any substantive changes to the 2006 version of the Act because the changes our Legislature enacted with the necessary two-thirds majority *did* make substantive changes.

Director's then-current recommendation regarding the SVP's
suitability for conditional release. (*Id.*, subd. (e).) The court then
makes an initial assessment as to whether the petition is
"frivolous" (*id.*, subd. (b)(1)), which asks whether the petition
"'indisputably has no merit'" because "any reasonable attorney
would agree that the petition on its face and any supporting
attachments [a]re totally and completely without merit" (*McKee*,
*supra*, 47 Cal.4th at p. 1192; *People v. Olsen* (2014) 229
Cal.App.4th 981, 999).[5] If not frivolous, the matter can proceed
to a hearing, where the SVP bears the burden of showing, by a
preponderance of the evidence, that conditional release is
appropriate. (§ 6608, subd. (k); *McCloud*, *supra*, 63 Cal.App.5th
at p. 10.)

      2.    *Unconditional discharge*

Under the Act, an SVP is entitled to unconditional
discharge if he "no longer meets the [SVP] definition" because the
SVP's "diagnosed mental disorder has so changed that he or she
is not a danger to the health and safety of others and is not likely
to engage in sexually violent criminal behavior if discharged." (§§
6604.9, subd. (d), 6605, subd. (a)(2).)

The applicable procedures and standards for assessing
whether unconditional discharge is appropriate also vary,
depending on the findings of the Department's annual evaluation.

---

5    If the SVP has previously filed a petition under section
6608 without a favorable suitability evaluation by the
Department, and if that petition was denied as frivolous or
meritless, the court must deny any subsequent petition "unless it
contains facts upon which a court could find that the condition of
the committed person had so changed that a hearing was
warranted." (§ 6608, subd. (a).)

If the Department's annual evaluation indicates that the SVP is suitable for unconditional discharge because he or she "no longer meets the [SVP] definition," the Director "shall" authorize the SVP to file a petition for unconditional discharge under section 6605. (§ 6604.9, subds. (d) & (f); *Smith 2022, supra*, 75 Cal.App.5th at p. 337; *Olsen, supra*, 229 Cal.App.4th at p. 992.) Under section 6605, and in light of the Director's evaluation that the SVP no longer qualifies as an SVP, the SVP is strongly presumed to be entitled to unconditional discharge and the State bears the burden of proving, beyond a reasonable doubt, that the SVP's "diagnosed mental disorder remains such that he or she is a danger to the health and safety of others and is likely to engage in sexually violent criminal behavior if discharged" from a secure facility. (§ 6605, subd. (a)(3).) In this regard, the People are essentially required to carry the same burden of showing SVP status as they did when initially committing the inmate. (See *People v. Cheek* (2001) 25 Cal.4th 894, 899.) After evaluating the evidence, the trial court has the power to (1) grant an unconditional discharge, (2) place the SVP on conditional release, or (3) deny the petition altogether and leave the SVP in a secure facility. (*People v. Landau* (2016) 246 Cal.App.4th 850, 881-882 (*Landau 2016*).)

If the Department's annual evaluation indicates that the SVP is *not* suitable for unconditional discharge, then the SVP has a two-step path to unconditional discharge—namely, (1) he or she must file a petition for conditional release under section 6608 (§ 6608, subd. (a)); and (2) after one year on conditional release, he or she may file a petition for unconditional discharge under section 6605 (§ 6608, subd. (m)). (*McKee, supra,* 47 Cal.4th at p.

1187; *Smith 2022, supra*, 75 Cal.App.5th at p. 337; *McCloud, supra,* 63 Cal.App.5th at p. 15, fn. 11.)

Separate and apart from the annual review process, if the Department otherwise develops "reason to believe" that an SVP is "no longer" an SVP, it is obligated to file a petition for a writ of habeas corpus seeking the inmate's unconditional discharge. (§§ 6605, subd. (c), 7250.)

## II.    Analysis

It is undisputed that the Director has not found Peyton or Grassini suitable for unconditional discharge or conditional release. Petitioners nevertheless argue that they are entitled to directly petition for unconditional discharge under section 6605 because (1) the Act authorizes such a petition, and (2) even if the Act does not, due process requires us to construe the Act to permit such a petition (e.g., *People v. Miracle* (2018) 6 Cal.5th 318, 339 ["'a statute must be construed, if reasonably possible, in a manner that avoids a serious constitutional question'"]).

### A.    *Does the Act authorize an SVP to directly petition for unconditional discharge under section 6605 without a favorable finding of suitability by the Director?*

In interpreting the Act, we start with its text. (E.g., *People v. Partee* (2020) 8 Cal.5th 860, 867.) As explained above, the text of the Act provides that a trial court is to directly entertain a petition for unconditional discharge under section 6605 if—and only if—the Department, in its annual evaluation, has concluded that the "person no longer meets the definition of a sexually violent predator." (§ 6604.9, subds. (d) & (f).) Without such an evaluation, the SVP must follow the two-step procedure, outlined above, that obligates the SVP to petition for conditional release under section 6608 and, after a year on such release, to petition

13

for unconditional discharge under section 6605. (§ 6608, subds. (a) & (m).) Every decision interpreting this text has come to the same conclusion. (*Smith 2022*, *supra*, 75 Cal.App.5th at p. 337 [same]; *McCloud*, *supra*, 63 Cal.App.5th at p. 15, fn. 11 [same].) We add our voice to this unanimous chorus of precedent.

Petitioners nevertheless proffer five reasons why, in their view, we should sing a different tune.

First, petitioners argue that the text of section 6605 does not *explicitly* specify that its procedures apply only when the Department's annual evaluation concludes that the SVP is no longer an SVP. This is true, but unpersuasive. Although *section 6605* does not explicitly prohibit an SVP from directly invoking its provisions without a favorable evaluation by the Department, the Act *as a whole* effectively dictates that prohibition. (*Meza v. Portfolio Recovery Associates, LLC* (2019) 6 Cal.5th 844, 856 ["""When we interpret a statute, ' . . . . [w]e do not examine th[e] statutory] language in isolation, but in the context of the statutory framework as a whole . . . ."""]; *Lopez*, *supra*, 12 Cal.5th at p. 858 ["we do not read the text [of a statute] in a vacuum"].) Section 6604.9 explicitly erects a fork in the procedural road: If the Department's annual evaluation recommends unconditional discharge, section 6604.9 dictates that a petition for unconditional discharge "shall" be entertained *under section 6605* (§ 6604.9, subds. (d) & (e)); but if the Department's annual evaluation recommends a conditional release, section 6604.9 dictates that a petition for conditional release "shall" be entertained *under section 6608* (*id.*, subds. (d) & (f)). Section 6608 goes on to provide that a petition for conditional release "shall be permitted . . . with or without the recommendation or concurrence of the Director of State Hospitals" (§ 6608, subd. (a));

14

tellingly, section 6605 has no such proviso.  Because we must
presume that our Legislature's omission of such language from
6605 is intentional (*Cornette v. Department of Transportation*
(2001) 26 Cal.4th 63, 73 ["When one part of a statute contains a
term or provision, the omission of that term or provision from
another part of the statute indicates the Legislature intended to
convey a different meaning."]; *Walt Disney Parks & Resorts U.S.,
Inc. v. Superior Court* (2018) 21 Cal.App.5th 872, 879 [same]), we
must presume that the right to directly petition under section
6605—unlike the right to do so under section 6608—*is* contingent
on the Director's favorable recommendation.  Indeed, this is
confirmed by the fact that section 6605—unlike section 6608—
has no provision for seeking the Director's input, which dovetails
with the notion that petitioners are not permitted to petition for
unconditional discharge under section 6605 without the
Director's recommendation.

Second, petitioners argue that section *6604.9, subdivision
(f)* authorizes an SVP to directly petition for unconditional
discharge under section 6605.  It does not.  Subdivision (f)
provides, in pertinent part, that a trial court, "upon receiving a
petition for unconditional discharge, shall order a show cause
hearing, pursuant to the provisions of section 6605 . . . ."  (§
6604.9, subd. (f).)  Although *subdivision (f)* itself does not
explicitly limit such petitions to those premised on the
Department's favorable annual evaluation, *subdivision (d)* of that
statute spells out that very limit:  It obligates the Department to
"file[]" a "petition . . . with the court" if it makes a favorable
recommendation for unconditional discharge, and it is *this*
petition—that is, one premised on the Department's favorable

15

evaluation—that triggers the court's duty under subdivision (f) to proceed under section 6605.

Third, petitioners argue that sections 6605 and 6608 are treated similarly for some purposes (such as the fact that the Department is obligated to simultaneously evaluate an SVP's suitability for unconditional discharge under section 6605 as well as for conditional release under section 6605), such that the two procedures should be deemed to be similar for *all* purposes, including that an SVP may directly petition for relief under either section. Again, we reject this argument because our Legislature explicitly provided that a section 6608 petition—but not a section 6605 petition—may be filed *without* a favorable evaluation by the Department. (Compare § 6608, subd. (a) with § 6605.)

Fourth, petitioners argue that a prior version of the Act suggested that an SVP may directly petition for unconditional discharge. Petitioners cite the November 2006 version of section 6608, subdivision (a), which provided: "Nothing in this article shall prohibit the person who has been committed as a sexually violent predator from petitioning the court for conditional release or an unconditional discharge without the recommendation or concurrence of the Director . . . ." (Former § 6608, subd. (a), italics added; accord, *McKee, supra,* 47 Cal.4th at p. 1187 [applying this version of the statute]; *People v. Reynolds* (2010) 181 Cal.App.4th 1402, 1406-1407 [same].) While this language is undoubtedly supportive of petitioners' current position, this language is nevertheless irrelevant because it has since been deleted and replaced with the current—and, critically, *different*—

16

language analyzed above.[6]  (*Kaanaana v. Barrett Bus. Servs.*
(2021) 11 Cal.5th 158, 170 ["When the Legislature alters
statutory language, 'as for example when it deletes express
provisions of the prior version,' the presumption is that it
intended to change the law's meaning."].)  Petitioners, citing
*Smith 2013, supra*, 212 Cal.App.4th at p. 1402, relatedly argue
that the 2006 version created "significant ambiguity" regarding
the relationship between sections 6605 and 6608.  This is doubly
irrelevant because the 2006 version has been superseded and
because the "ambiguity" *Smith 2013* addressed is whether an
SVP could file a petition for conditional release under section
6605 under a provision of the November 2006 version of the Act
that has since been repealed.  (*Ibid.*)

Lastly, petitioners argue that *Smith 2022* and the other
cases reading the Act as making a direct petition for
unconditional discharge contingent upon a favorable Department
evaluation are wrongly decided because they are based on a
"casual reading" of the Act.  Aside from its breezily disrespectful
tone, this argument lacks merit for all of the reasons set forth
above.

---

6    Interestingly, the 2006 version of section 6608 was a
departure from the original 1995 version of the statute, which—
like the current language—contemplated a two-step process:  The
1995 version provided that "[n]othing in this article shall prohibit
the person who has been committed as a sexually violent
predator from petitioning the court for conditional release and
subsequent unconditional discharge without the recommendation
or concurrence of the Director of Mental Health."  (§ 6608, subd.
(a), 1995 Stats. ch. 763, § 3.)  The voters in Proposition 83
amended this language to the language cited by petitioners, and
then our Legislature in 2013 amended the section to its current
verbiage.  (Sen. Bill No. 295, Stats. 2013, ch. 182, § 3.)

**B.     *Does due process obligate us to construe the Act
to permit an SVP to directly petition for unconditional
discharge?***

Both the federal and California Constitutions guarantee
that a person "may not be deprived of life, liberty, or property
without due process of law . . . ." (Cal. Const., art. I, § 7; U.S.
Const., 14th Amend.)

It is undisputed that petitioners' liberty is at stake.
Because "'commitment for any purpose constitutes a significant
deprivation of liberty that requires due process protection'"
(*Foucha v. Louisiana* (1992) 504 U.S. 71, 80 (*Foucha*); *Addington
v. Texas* (1979) 441 U.S. 418, 425), petitioners' civil commitments
as SVPs implicate their liberty interests and are accordingly
entitled to due process protection. (*Otto, supra*, 26 Cal.4th at p.
209; *Jackson, supra*, 75 Cal.App.5th at p. 21.)

Due process has been construed as encompassing both
substantive and procedural rights. We examine each subset of
rights, and then consider petitioners' further arguments.

1.     *Substantive due process*

In the context of civil commitment, substantive due process
refers to the conditions under which such commitment—and the
resulting deprivation of liberty—is permitted *at all*, and
"regardless of the fairness of the procedures used." (*Zinermon v.
Burch* (1990) 494 U.S. 113, 135.) Civil commitment comports
with substantive due process only if the person committed is
"both [(1)] mentally ill and [(2)] dangerous." (*Foucha, supra*, 504
U.S. at p. 77; *McKee, supra*, 47 Cal.4th at p. 1188 [requiring
"'proof of dangerousness with the proof of some additional factor,
such as a "mental illness" or "mental abnormality"'"].) Once

these prerequisites have been established—either by clear and
convincing evidence, or inferentially by a prior finding that the
person is not guilty of a crime by reason of insanity—that person
may be indefinitely committed, "subject to periodic review of the
[person's] suitability for release." (*Jones v. United States* (1983)
463 U.S. 354, 363-364, 368 (*Jones*); *Addington*, *supra*, 441 U.S. at
pp. 427-428; *Foucha*, at p. 76.) However, if at some later point in
time, circumstances change and the committed person is found no
longer to be mentally ill or dangerous, he or she must be released.
(*Foucha*, at p. 77; *Kansas v. Hendricks* (1997) 521 U.S. 346, 364
(*Hendricks*); *McKee*, at p. 1194; *Hubbart v. Superior Court* (1999)
19 Cal.4th 1138, 1177; *Cheek*, *supra*, 25 Cal.4th at p. 898.) A
State may permissibly require an indefinitely confined person to
prove his or her entitlement to release by a preponderance of the
evidence. (*Jones*, at pp. 357-358, 370; *McKee*, at p. 1191 ["the
requirement that [the committed person], after his initial
commitment, must prove by a preponderance of the evidence that
he is no longer an SVP does not violate due process"].)

The two-step procedure an SVP must follow under the Act
to obtain unconditional discharge when the Department's annual
evaluation does not recommend such a discharge comports with
these requirements of substantive due process. That is because
an SVP in this circumstance has already been found beyond a
reasonable doubt to be a person with a mental illness and who is
dangerous, is permissibly being indefinitely confined while
subject to periodic review, and has the opportunity establish an
entitlement to release upon proof that he is no longer mentally ill
or dangerous. (Accord, *McKee*, *supra*, 47 Cal.4th at p. 1191.)
Whether a committed person is entitled to different *procedures*

for obtaining an unconditional discharge is a question of *procedural* due process, to which we turn next.

2.    *Procedural due process*

"Once it is determined that due process applies, the question remains what process is due." (*Morrissey v. Brewer* (1972) 408 U.S. 471, 481.)  Due process is inherently "flexible" and "calls for such procedural protections as the particular situation demands" (*ibid.*; *Mathews v. Eldridge* (1976) 424 U.S. 319, 334 (*Mathews*)).  In calibrating which procedural protections a particular situation demands, courts traditionally consider the following factors:  "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and (4) the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official." (*Otto, supra*, 26 Cal.4th at p. 210; *Mathews, supra*, 424 U.S. at pp. 334-335.)

In arguing that an SVP should be able to directly file a petition for unconditional discharge under section 6605 without a favorable evaluation by the Department, petitioners present the following question:  Is an SVP denied procedural due process because the Act requires the SVP to first petition for a one-year conditional release before seeking unconditional discharge— rather than allowing the SVP to directly petition for an unconditional discharge—when the Department's most recent

evaluation does not find the SVP suitable for an unconditional discharge?

We conclude the answer is "no."

Precedent establishes that it does not offend procedural due process to require an individual who is civilly committed due to a mental illness that renders him dangerous to proceed through two steps before an unconditional discharge. That was the holding in *Beck, supra*, 47 Cal.App.4th 1676. *Beck* dealt with an individual found not guilty by reason of insanity, and the statutory scheme at issue in that case authorized such an individual's unconditional discharge only after he first spent a year in a community-based outpatient treatment program. (*Id.* at p. 1681.) In upholding this two-step procedure as consistent with procedural due process, *Beck* cited "three considerations": (1) the individual's "acquittal by reason of insanity entails a finding that the defendant in fact committed a criminal offense," which "supports an inference of potential dangerousness and possible continuing mental illness," (2) "the process of evaluating the defendant for a prolonged period in a noninstitutional setting has obvious merit" because "[i]t provides a 'trial run' for the defendant's release, conducted under conditions resembling what the defendant will later find in the community," and (3) "the fact that the participation in an outpatient program involves a lesser interference with personal liberty than institutional commitment makes it easier to justify a longer period of restriction." (*Id.*, at p. 1684.) All three considerations are also true under the Act: (1) the initial finding of SVP status *requires* proof of mental illness and dangerousness beyond a reasonable doubt, (2) the Act provides for a one-year "trial run" in the community in the form of conditional release, and (3) conditional release entails less

interference with personal liberty than requiring the SVP to remain in a secure facility. Petitioners attempt to distinguish *Beck* on the ground that it involved a person found not guilty by reason of insanity and hence, in their view, someone whose civil commitment occurs *in lieu* of a criminal sentence rather than after that sentence has been completed, but they are wrong: Such commitments *can* extend beyond what would have been the length of the insanity acquittee's criminal sentence (Pen. Code, § 1026.5, subd. (b)(1)). This distinction does not in any event undercut the applicability of *Beck*'s reasoning to the Act. Thus, despite petitioners' repeated complaint that it is "cumbersome," we conclude that that Act's two-step process for obtaining unconditional discharge does not offend procedural due process.

To be sure, the Act also has an expedited, one-step procedure for obtaining unconditional discharge that applies when the Department's evaluator finds that the SVP is suitable for such a discharge. The availability of such an expedited procedure makes eminent sense, for there is no reason for a period of supervision and treatment if the Department—who has been treating and supervising the SVP for the duration of his or her civil commitment—has in its well-informed opinion concluded that the SVP no longer meets the SVP definition. But we do not see how the availability of this second, expedited procedure invalidates the otherwise constitutionally valid two-step procedure that applies when the Department's evaluator does *not* find the SVP suitable for an expedited, unconditional discharge.

The more traditional analysis of procedural due process factors also supports our conclusion that procedural due process does not compel the replacement of the Act's two-step procedure for unconditional discharge with a one-size-fits-all, expedited

procedure available to *all* SVPs—including those whom the
Department has found not to be suitable for such a discharge.

First, the private interest at stake when deciding between
these two procedures is the SVP's liberty interest in being
released into the community *without* any supervision and
treatment instead of being released in the community *with* such
supervision and treatment. Under either procedure, the SVP is
in the community and no longer in a secured facility. The
additional intrusion of supervision and treatment, while not
insubstantial, is not demonstrably greater.

Second, the risk of erroneous deprivation of the SVP's
liberty interest using a two-step procedure rather than a one-step
procedure is minimal, and the value of the two-step procedure is
not just probable but *significant.* The risk of the SVP being
wrongly denied unconditional discharge is minimal because the
process for assessing eligibility for unconditional discharge is the
same under both procedures—it is evaluated under section 6605;
in this regard, the SVP's dignitary interest and ability to "present
[his or her] side of the story" is also the same under both
procedures. Indeed, the only real difference between the
procedures is whether the 6605 hearing is held immediately or
after a year of conditional release. On the flip side, the value of
requiring an SVP to proceed through the two-step procedure is
incalculable. "The subtleties and nuances of psychiatric
diagnosis render certainties virtually beyond reach in most
situations" and "makes it very difficult for the expert physician to
offer definite conclusions about any particular patient."
(*Addington, supra,* 441 U.S. at p. 430.) As a result, the "process
of determining whether [an SVP] is prepared for successful,"
unconditional discharge "into the community is unquestionably

fraught with uncertainty." (*Beck*, *supra*, 47 Cal.App.4th at p. 1683.)  The one-year period of conditional release mandated by the first step of the two-step process is valuable because it mitigates that risk—and thereby "protects the public"—"by requiring SVPs [to] demonstrate the ability to spend a year in the community" without revocation of that status (*People v. Smith* (2020) 49 Cal.App.5th 445, 453).

Third, the State's interest in using the two-step process that starts with the one-year period of conditional release is, as noted above, the "strong government interest in protecting the public from those who are dangerous and mentally ill." (*Otto*, *supra*, 26 Cal.4th at p. 214; *People v. Allen* (2008) 44 Cal.4th 843, 857 ["The [Act] was enacted to . . . confine and treat . . . individuals until it is determined they no longer present a threat to society."].)

        3.    *Petitioners' arguments*

Petitioners resist our conclusion with what boil down to five arguments.

First, they argue that the two-step procedure violates procedural due process because it hinges an SVP's right to petition directly for unconditional discharge on the arbitrary "whims" of the Director.  This argument ignores that the Director is bound by the conclusions and recommendations of the "professionally qualified person" who annually evaluates the SVP, and who is governed by a code of ethics. (E.g., *Rand v. Board of Psychology* (2012) 206 Cal.App.4th 565, 584 [detailing ethical standards, including the ethical duty to objectivity].)  The Director lacks the power to second guess the evaluator (*Landau 2011*, *supra*, 199 Cal.App.4th at pp. 37-39; *Smith 2013*, *supra*,

212 Cal.App.4th at p. 1399, fn. 2), which all but eliminates the risk of the Director injecting caprice into the process.

Second, petitioners argue that denying SVPs the power to directly petition for unconditional discharge "effectively" amounts to a "lifetime commitment." This argument ignores the plain text of the Act, which entitles an SVP, without a favorable Department evaluation, to petition either (1) for unconditional discharge under section 6605 after one year of conditional release (§ 6608, subd. (m)), and (2) to petition for conditional release at any time (§ 6608, subd. (a)).

Third, petitioners argue that the United States Supreme Court's decision in *Hendricks, supra*, 521 U.S. 346, dictates a holding in their favor. They are wrong. To be sure, *Hendricks* upheld Kansas's sexual violent predator law, and that law had a provision—unlike the Act—which authorized SVPs to petition for unconditional discharge. But *Hendricks* addressed whether the Kansas act was constitutionally defective because its *commitment* procedures authorized commitment based on a finding of a "mental abnormality" rather than a "mental illness" (*id.* at p. 350); *Hendricks* had no occasion to examine the constitutional sufficiency of the Kansas act's *release* procedures. That the Kansas act happened to permit SVPs to file petitions for unconditional discharge played no role in the court's holding or analysis, and thus has no weight here. (*People v. Casper* (2004) 33 Cal.4th 38, 43 ["It is axiomatic that cases are not authority for propositions not considered."].)

Fourth, petitioners argue that there has to be a "tradeoff" whenever our Legislature or the voters amend the Act. As a result, petitioners continue, when the voters in 2006 changed the Act to provide for indefinite confinement rather than a two-year

confinement, there needed to be "some sort of offsetting protections to ensure continued ability of SVP defendants to obtain release at the appropriate time." Petitioners are wrong. They cite no authority for the proposition that a statute may be amended only if a change in the statute is accompanied by an "offsetting" change. What is more, petitioners' suggestion that we get into the business of overseeing how legislation is amended is a dangerous one. They ask us to invent and then give ourselves a power to dictate how bills must be amended and then to evaluate each amendment to see it is appropriately "offset" by other provisions. The separation of powers makes this suggestion profoundly unwise if not downright foolish.

Lastly, petitioners argue that granting SVPs the right to directly petition for unconditional discharge is compelled by procedural due process because SVPs have no other available remedy should they cease qualifying as "sexually violent predators" in the interregnum periods between annual evaluations. We reject this argument. As noted above, if the Department develops "reason to believe" that an SVP *at any time* no longer qualifies as an SVP, the Department is obligated to file a petition for habeas corpus relief under section 7250 seeking an unconditional discharge. (§ 6605, subd. (c).) The SVP also has a right to file a habeas corpus petition under section 7250. (§ 7250.) Petitioners assert that 7250's procedures are not as "petitioner friendly" as section 6605's (because SVPs under section 6605 are entitled to appointed counsel, to appointed experts, and to a jury trial where the State is required to prove their continued SVP status beyond a reasonable doubt), that their right to petition for habeas relief under section 7250 is therefore constitutionally inadequate, and that we must therefore

construe the Act to permit them to directly petition for unconditional discharge under section 6605.

We reject this argument as well because the central premise of the argument—namely, that habeas procedures for release from custody are constitutionally inadequate to serve as a safety valve unless they are a mirror image (or, at a minimum, comparable) to the procedures used to place the person in custody—is incorrect. A convicted felon petitioning for habeas corpus relief from his conviction is not denied procedural due process merely because the substantive standards and procedures applicable when he seeks release through a habeas corpus petition (where the felon is entitled to appointed counsel only upon making a prima facie case for relief, where he bears the burden of showing that his confinement is unlawful, and where he presents his claim to a judge) are less favorable than those applicable at the trial where he was convicted (where he is entitled to appointed counsel during the entire procedure, where the State bears the burden of establishing his guilt beyond a reasonable doubt, and where the trier of fact is a jury). The same principle applies here, and thus obligates us to reject petitioner's argument that section 7250 is inadequate merely because it does not employ the same procedures as section 6605, which, as noted above, are identical to the procedures used to impose SVP status in the first place. Instead, section 7250—like the writ of habeas corpus generally—was meant to operate as a bona fide safety valve available when new evidence showing that the SVP is no longer a "sexually violent predator" "completely undermines" either the initial finding of SVP status or the Department's most recent annual evaluation (*People v. Johnson* (2015) 235 Cal.App.4th 80, 88-89; *Smith 2022*, *supra*, 75 Cal.App.5th at pp.

344-345).  Where, as here, no such showing has been made, procedural due process is not offended by requiring SVPs to proceed under the Act's usual procedures.

Indeed, were the law to the contrary—such that section 7250's failure to employ section 6605's procedures meant that SVPs were entitled to directly invoke section 6605's procedures at any time—then section 6608 and much of section 6604.9 would be effectively nullified.  But our task is to give effect to the provisions of the Act, not to wipe them off the books.  (*Tuolomne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1039 ["'An interpretation that renders statutory language a nullity is obviously to be avoided.'"].)

## DISPOSITION

The orders are affirmed.

## **CERTIFIED FOR PUBLICATION**.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

CHAVEZ

Filed 8/16/22 (unmodified opinion attached)

## CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B314992 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. ZM014741 & ZM011411) |
| v. | |
| FRANKLIN PEYTON et al., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendants and Appellants. | NO CHANGE IN THE JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on July 28, 2022, be
modified as follows:

"Attachment B"

1.  On page 17, before the first full sentence, which begins with "Petitioners," insert the following:

> Citing the Legislative Counsel's Digest to the 2013 bill that amended the Act to its current form, which indicates that the 2013 bill was meant to "make nonsubstantive, organizational changes" to the Act (Legis. Counsel's Dig., Sen. Bill No. 295 (2013-2014 Reg. Sess.), Stats. 2013, ch. 182, Summary Dig.), petitioners contend we must read the current statutory language to have the same effect as the November 2006 version of the Act.  Because the Digest is "not part of the law and cannot alter the scope, meaning, or intent of the bill itself" (*People v. Vang* (Aug. 5, 2022, C090365) __Cal.App.5th__ [2022 Cal.App.Lexis 685, *37]), and because the Digest's characterization of the 2013 amendments conflicts with the text of the Act, we give effect to the Act's text over the Digest's commentary.  (*In re Marriage of Stephens* (1984) 156 Cal.App.3d 909, 916-917 ["Where the [legislative counsel's] digest conflicts with the unambiguous language of the statute, . . . the digest is not controlling."].)

2.  On page 17, replace the entire last paragraph beginning with "Lastly," with the following paragraph:

> Lastly, Grassini argues that *Smith 2022* and the other cases reading the Act as making a direct petition for unconditional discharge contingent upon a favorable Department evaluation are wrongly decided.  This argument lacks merit for all of the reasons set forth above.

\*  \*  \*

There is no change in the judgment.

Grassini's petition for rehearing is denied.

LUI, P. J.          CHAVEZ, J.          HOFFSTADT, J.

Case No.
_____

# SUPREME COURT OF CALIFORNIA

PEOPLE OF THE STATE OF CALIFORNIA,                    )        Second District
                                                      )        Court of Appeal No.
          Plaintiff and Respondent,                   )        B314992
                                                      )
v.                                                    )
                                                      )
FRANKLIN PEYTON and RANDEE GRASSINI,                  )
                                                      )
          Defendants and Appellants.                  )
_____)

Appeal from the Superior Court of California
County of Los Angeles
Honorable Robert S. Harrison, Judge
(Los Angeles County Case Nos. ZM014741 and ZM011411)

## PETITION FOR REVIEW

GERALD J. MILLER
P.O. Box 543
Liberty Hill, TX 78642
(512) 778-4161
miller120030@gmail.com
State Bar No. 120030

Attorney for Defendant, Appellant, and Petitioner Franklin Peyton

1

"Attachment C"

## TABLE OF CONTENTS

Page

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

WHY REVIEW SHOULD BE GRANTED . . . . . . . . . . . . . . . . . 6

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A.    Petitioner's Commitment As An SVP. . . . . . . . . 8

    B.    The Petition For Discharge. . . . . . . . . . . . . . . . . 8

    C.    The Court Of Appeal's Reported Decision.. . . . . 9

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    THIS COURT SHOULD GRANT REVIEW TO
    DETERMINE WHETHER THE SVP STATUTE'S
    REQUIREMENT THAT AN INDIVIDUAL SEEKING
    UNCONDITIONAL RELEASE MUST FIRST OBTAIN
    AUTHORIZATION FROM THE DSH VIOLATES THE
    STATE AND FEDERAL CONSTITUTIONAL
    REQUIREMENTS OF DUE PROCESS. . . . . . . . . . . . 12

    A.    The SVP Act Permits The Continued
         Commitment Of Sexually Violent Individuals
         Whose Diagnosed Mental Disorder Creates A
         Serious And Well Founded Risk Of Sexual
         Reoffense If Released. . . . . . . . . . . . . . . . . . . . . . 13

    B.    The SVP Statute Permits An Individual To Seek
         Conditional Or Unconditional Discharge From
         Commitment And, As Interpreted By The Court
         Of Appeal, Requires Authorization By The DSH
         Prior To Filing An Initial Petition For
         Unconditional Release. . . . . . . . . . . . . . . . . . . . . 16

C.   To Satisfy Due Process, A Statute Authorizing Civil Commitment Based On Mental Illness Must Provide An Expedient Means For Terminating The Commitment When The Individual Is No Longer Mentally Ill Or No Longer Poses A Danger To Others. . . . . . . . . 18

D.   This Court Should Grant Review To Determine Whether The "Two Step" Process For Obtaining Release From Commitment As An SVP, Including The Requirement That The DSH Authorize An Initial Petition For Unconditional Release, Constitutes A Sufficiently Expedient Means To Obtain Release, So As To Satisfy Due Process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

3

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Addington v. Texas* (1979) 441 U.S. 418 [99 S. Ct. 1804; 60 L. Ed.
    2d 32] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Albertson v. Superior Court* (2001) 25 Cal.4th 796 . . . . . . . . . . 15

*Cooley v. Superior Court* (2002) 29 Cal.4th 228 . . . . . . . . . . . . . 14

*Foucha v. Louisiana* (1992) 504 U.S. 71, 77 [112 S.Ct. 1780, 118
    L.Ed.2d 437] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138 . . . . . 14, 15, 25

*Jones v. United States* (1983) 463 U.S. 354 [103 S. Ct. 3043; 77 L.
    Ed. 2d 694] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

*Kansas v. Hendricks* (1997) 521 U.S. 346 [117 S.Ct. 2072, 138
    L.Ed.2d 501] . . . . . . . . . . . . . . . . . . . . . . . . 20-22, 23, 24, 25

*People v. Cheek* (2001) 25 Cal.4th 894 . . . . . . . . . . . . . . . . . . . . 15

*People v. Hubbart* (2001) 88 Cal.App.4th 1202 . . . . . . . . . . . . . 15

*People v. Hurtado* (2002) 28 Cal.4th 1179 . . . . . . . . . . . . . . . . . 14

*People v. Johnson* (2008) 162 Cal.App.4th 1263 . . . . . . . . . . . . . 14

*People v. LaBlanc* (2015) 238 Cal.App.4th 1059 . . . . . . . . . . . . . 15

*People v. McKee* (2010) 47 Cal.4th 1172 . . . . . . 7, 14, 22-23, 24, 25

*People v. Roberge* (2003) 29 Cal.4th 979 . . . . . . . . . . . . . . . . . . . 13

*People v. Smith* (2022) 75 Cal.App.5th 332 . . . . . . 8, 10, 13, 17, 18

*People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888 . . . 13-14


**Statutes**                                                                 **Page**

Penal Code section 288, subdivision (a) . . . . . . . . . . . . . . . . . . . . 11

Penal Code section 288a, subdivision (c) . . . . . . . . . . . . . . . . . . . 11

Stats. 1995, Chap. 763, § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Welf. & Inst. Code section 6250, subdivision (c) . . . . . . . . . . . . . 14

Welf. & Inst. Code sections 6600 *et seq.* . . . . . . . . . . . . . . . . . . . 8, 13

Welf. & Inst. Code sections 6600, subdivision (a)(1) . . . . . . . . . 13

Welf. & Inst. Code sections 6600, subdivision (a)(3) . . . . . . . 15, 17

Welf. & Inst. Code section 6605 . . . . . . . . . . . . . . . . . . 8, 16, 17

Welf. & Inst. Code section 6605, subdivision (a) . . . . . . . . . . . . 22

Welf. & Inst. Code section 6605, subdivision (a)(2) . . . . . . . . . . 16

Welf. & Inst. Code section 6605, subdivision (a)(3) . . . . . . . . . . 16

Welf. & Inst. Code section 6608 . . . . . . . . . . . . . . . . . . . . . . 16

Welf. & Inst. Code section 6608, subdivision (a) . . . . . . . . . 17, 22

Welf. & Inst. Code section 6608, subdivisions (b)(1) - (4) . . . . . . 17

Welf. & Inst. Code section 6608, subdivision (g) . . . . . . . . . . . . 18

Welf. & Inst. Code section 6608, subdivision (k) . . . . . . . . . . . . 17

**Other**                                                                         **Page**

CALCRIM No. 3454 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## ISSUE PRESENTED

Does the statutory requirement that a defendant seeking
unconditional release from commitment as a Sexually
Violent Predator (SVP) obtain either authorization from the
Department of State Hospitals (DSH) or a year of
conditional release violate the state and federal
constitutional guarantees of due process?

## WHY REVIEW SHOULD BE GRANTED

This Court should grant review to resolve an issue of public
importance under the SVP statute, and that involves a
fundamental question of due process under the state and federal
constitutions, namely whether the present mechanism by which
an SVP can seek unconditional discharge from commitment is
sufficiently efficient and expedient to satisfy the constitutional
requirements imposed by both this Court and the United States
Supreme Court.

Under the interpretation of the SVP statute adopted by
both the First District Court of Appeal and the Second District in
this case, an individual seeking unconditional discharge must
either first obtain authorization from the DSH or successfully
seek conditional discharge (with or without such authorization)
and file a second petition for unconditional discharge a year later.
The present case involves the question of whether this "two step"
process, which can take several years or more, provides a
sufficiently expedient method by which to terminate the
commitment of an individual who is no longer mentally ill or

6

dangerous, or otherwise no longer meets the criteria for continued commitment as an SVP.  Such expediency is required by not only the terms of the SVP statute, which is directed at a small number of particularly dangerous individuals and involves treatment rather than punishment, but also by due process, as a condition of the statute's constitutionality, and in light of the significant deprivation of liberty involved.

Although this Court, in the *McKee* case, has previously upheld the constitutionality of the SVP statute, in light of the 2006 amendments replacing the prior two year commitment period with an indefinite commitment, it did so based on the presence of "appropriate constitutional protections," including the ability of an individual to obtain prompt and meaningful review of his continued commitment as an SVP.  In addition, other courts, including the United States Supreme Court, have upheld similar state SVP statutes based on both the presence of adequate review provisions and the absence of the onerous provisions involved in this case.  This case, therefore, squarely presents the issue of whether the "two step" process,  including the requirement for DSH authorization, that were adopted by the Legislature following the decision in *McKee*, vitiated those protections, so as to violate due process.  As a result, this Court should grant review to conclusively determine the constitutionality of the SVP statute in light of the appellate courts' interpretation of the process for gaining unconditional release under that statute.

## STATEMENT OF THE CASE

### A.    Petitioner's Commitment As An SVP.

By petition filed June 15, 2009, the People sought to
commit defendant, appellant, and petitioner Franklin Peyton
("petitioner") as a sexually violent predator ("SVP"), pursuant to
Welf. & Inst. Code sections 6600 *et seq.*  After initially denying
the allegations, petitioner on August 4, 2015, over his counsel's
objection, waived his right to a trial, admitted the petition, and
was committed as an SVP.  Following a series of annual reports
by the hospital, petitioner's commitment was continued into 2021.

### B.    Petitioner's Petition For Discharge.

On March 4, 2021 petitioner, along with another SVP
committee, Randee Grassini ("Grassini"), filed a joint petition for
unconditional discharge from the state hospital, pursuant to Welf.
& Inst. Code section 6605.  The People opposed both the proposed
joinder and petitioner's petition for unconditional discharge.  In
addition, the Department of State Hospitals (DSH) on June 23,
2021 submitted an annual report, which indicated that petitioner
continued to meet the requirements for commitment as an SVP,
and on July 29, 2021, ordered petitioner's commitment continued.

On July 29, 2021, the trial court held that petitioner could
not seek unconditional release under Welf. & Inst. Code section
6605, because the petition was not authorized by the DSH.
Instead, the court ordered that the joint petition filed by
petitioner and Grassini would be treated as a petition for

conditional release, pursuant to Welf. & Inst. Code section 6608.[1]

## C.    The Court Of Appeal's Reported Decision.

Petitioner filed a timely notice of appeal on August 26, 2021. On July 28, 2022, the Court of Appeal (Second District, Division Two) issued its reported decision. In its decision, the court affirmed the trial court's order, and held that (1) the SVP statute required that a defendant seeking unconditional release either first obtain authorization from the DSH or obtain conditional release, then file a petition for unconditional release (with or without the DSH's authorization) a year later; and (2) that the above "two step" process did not violated due process.[2] As to the former, the court agreed with the holding of the First District in *People v. Smith* (2022) 75 Cal.App.5th 332 that the SVP Act does not authorize an SVP to directly petition for unconditional discharge without authorization by the DSH, and that an individual must instead either obtain such authorization or follow a "two step" process, i.e. first obtaining conditional release, then seeking unconditional release a year later. (Slip Opinion, pp. 13-17.)

As to the latter, the court rejected petitioner's argument

---

[1] Following the filing of the appeal in this matter, the trial court also denied conditional release for petitioner and Grassini.

[2] The present petition challenges only the holding of the Court of Appeal with respect to the due process issue. As a result, although petitioner disagrees with the Court of Appeal's interpretation of the statute, it accepts that interpretation for the purpose of the present petition. Petitioner's counsel is informed that counsel for Grassini also intends to file a petition for review of the Court of Appeal's opinion.

that due process required that the SVP statute provide an expedient method for a person that is no longer mentally ill or dangerous to obtain release, and that the above process failed to provide such a scheme, particularly in light of the amendments to the SVP statute providing for an indefinite rather than a two year commitment. (Slip Opinion, pp. 18-28.) In particular, the court held that an SVP has the opportunity to prove, to the DSH and/or the court, that he is no longer mentally ill or dangerous (*Id.*, p. 19); that the "two step" process reasonably provides for a "trial run" (i.e. conditional release) before an SVP is unconditionally released (*Id.*, pp. 21-24); and that the state had a strong interest in protecting the public from dangerous and mentally ill persons. (*Id.*, p. 24.) The Court also rejected petitioner's arguments that the statute places excessive authority with the DSH, and failed to provide for an expedient means of obtaining release. (*Id.*, pp. 24-26.) The court also held, as did the court in *Smith*, that the right to file a petition for habeas corpus under Welf. & Inst. Code section 7250 constituted an adequate means of obtaining immediate, unconditional release. (Slip Opinion, pp. 26-28.)

On August 16, 2022, the Court denied appellant Grassini's petition for rehearing, but modified its July 28, 2022 opinion, without changing the judgment. A copy of the opinion, with modifications, is attached hereto as an exhibit, pursuant to the Rules of Court.

## STATEMENT OF FACTS[3]

Petitioner, a 74 year old male, has been diagnosed with pedophilic disorder, nonexclusive type and alcohol use disorder, based on a history of recurrent, intense, sexually arousing fantasies, urges, or behaviors involving prepubescent children. Petitioner was convicted of several sexual offenses against children, beginning in 1985, when he was convicted of three counts of sexual assault in Colorado, and sentenced to 16 years in prison. In 1986, petitioner was convicted in California of 11 counts of lewd and lascivious acts on a child under age 14 (Penal Code section 288, subdivision (a)) and a single count of oral copulation of a child under 14 (Penal Code section 288a, subdivision (c)), and sentenced to 26 years in prison.

Since his commitment as an SVP in August 2015, petitioner has had only a few minor rules violations and no recent serious incident reports, and appears to be a positive influence on his unit. While in the hospital, petitioner became partners with and ultimately married his fellow petitioner, Randee Grassini, whom he spends time with in the hospital, and their marriage was described as "mutually supportive."

According to the DSH evaluation, petitioner currently poses an average or moderate level of risk to commit sexual or violent

---

[3]The present appeal involves a purely legal issue, in which the facts of the case are largely irrelevant. As a result, the following summary of alleged facts, which are taken from the DSH's June 2021 evaluation of petitioner, are provided solely as background information for this Court, and are not conceded by petitioner.

offenses; however, his advanced age (74) may be a protective factor. The evaluation also concluded that petitioner continued to meet the diagnostic criteria for pedophilia and the criteria for commitment as an SVP, and that conditional release is not in petitioner's best interest, but that petitioner could be safely supervised in the community, due to his advanced age.

## LEGAL ARGUMENT

**THIS COURT SHOULD GRANT REVIEW TO DETERMINE WHETHER THE SVP STATUTE'S REQUIREMENT THAT AN INDIVIDUAL SEEKING UNCONDITIONAL RELEASE MUST FIRST OBTAIN AUTHORIZATION FROM THE DSH VIOLATES THE STATE AND FEDERAL CONSTITUTIONAL REQUIREMENTS OF DUE PROCESS.**

This Court should grant review because, as shown below, the holding by the trial court and the Court of Appeal that petitioner and Grassini were required to either obtain the authorization of DSH prior to filing their petition for unconditional discharge or to first seek conditional discharge then, a year later, file a petition for unconditional discharge (with or without such authorization) poses issues under the SVP statute. In particular, the imposition of the DSH authorization requirement and the "two step" process under the SVP statute raises fundamental questions about the continued constitutionality of that statute, in view of the limited purpose of the statute and the holdings of this Court and the United States Supreme Court, which have required the existence of sufficient and expedient means by which persons that are no longer

12

mentally ill or dangerous, or otherwise no longer meet the
requirements for continued commitment as SVPs, can gain
release from such commitment.  Those due process issues remain
novel and unresolved, despite the interpretation of the statute by
the First District in *Smith* and the Second District in this case,
particularly in light of the amendment of the statute to provide
for an indefinite rather than a two year commitment, and so
warrant review by this Court.

> A.    **The SVP Act Permits The Continued
> Commitment Of Sexually Violent Individuals
> Whose Diagnosed Mental Disorder Creates A
> Serious And Well Founded Risk Of Sexual
> Reoffense If Released.**

The Sexually Violent Predator Act (SVPA), Welf. & Inst.
Code sections 6600 *et seq.*, permits the People to continue the
involuntary confinement of sexually violent prisoners, in certain
circumstances, beyond the completion of their respective
sentences, where: (1) the person has been convicted of a sexually
violent offense against one or more victims; (2) the person has a
diagnosed mental disorder; and (3) such disorder "makes the
person a danger to the health and safety of others in that it is
likely that he or she will engage in sexually violent criminal
behavior" without appropriate treatment or custody.  (Welf. &
Inst. Code section 6600, subdivision (a)(1).)  A person is
considered likely to engage in sexually violent predatory behavior
when there is a "serious and well-founded risk" of violence if
released into the community.  (*People v. Roberge* (2003) 29
Cal.4th 979, 988; *People v. Superior Court (Ghilotti)* (2002) 27

13

Cal.4th 888, 916.)

According to the legislative declaration of purpose, the SVP statute is directed at a "small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders [that] can be identified while they incarcerated," and who are "not safe to be at large and if released represent a danger to the health and safety of others in that they are likely to engaged in acts of sexual violence." (See Stats. 1995, Chap. 763, § 1; *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) As a result, the SVP statute, by definition, narrowly targets only a "very small number of dangerous people" who "pose a much greater threat to the public at large," and where the "danger to the community is particularly high." (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1198-88; *People v. Johnson* (2008) 162 Cal.App.4th 1263, 1284-86; *see also People v. McKee* (2012) 207 Cal App 4th 1325, 1347 (SVPs "pose a greater risk and unique dangers to a particularly vulnerable class of victims").)

The SVP statute is not intended to be punitive; to the contrary, Welf. & Inst. Code section 6250, subdivision (c) provides that the SVP statute "shall be liberally construed so that, as far as possible and consistent with the rights of persons subject to commitment, those persons shall be treated, not as criminals, but as sick persons." (*See also Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1144 ("The Act provides treatment for mental disorders from which [sex offenders] currently suffer and reduces the threat of harm otherwise posed to the public. No punitive purpose was intended").) Further, commitment under the SVP

14

statute is intended to be temporary, and directed toward treatment rather than punishment.  In particular, the Act is "'designed to ensure that the committed person does not "remain confined any longer than he suffers from a mental abnormality rendering him unable to control his dangerousness."'" (*People v. Cheek* (2001) 25 Cal.4th 894, 898, quoting *Hubbart*, *supra*, 19 Cal.4th at p. 1177 (citations omitted); *see also People v. LaBlanc* (2015) 238 Cal.App.4th 1059, 1069.)

In determining whether a prisoner meets the requirements for commitment, both the SVP statute and the case law make clear that the focus must be on the individual's <u>current</u> mental status and behavior.  (*See, e.g.*, Welf. & Inst. Code section 6600, subdivision (a)(3); CALCRIM No. 3454 (the fact that a person has been convicted of sexually violent offenses shall not constitute the sole basis for a determination that he is an SVP; *see also Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1145 ("prior crimes play a limited role in the SVP determination").)  Further, the trier of fact must find that an individual has both a <u>current</u> mental disorder and, as a result, represents a likelihood of sexually reoffending <u>as of the time of the proposed commitment</u>.  (*See, e.g., People v. Hubbart* (2001) 88 Cal.App.4th 1202, 1219; *Albertson v. Superior Court* (2001) 25 Cal.4th 796, 801-02.)

15

**B.    The SVP Statute Permits An Individual To Seek Conditional Or Unconditional Discharge From Commitment And, As Interpreted By The Court Of Appeal, Requires Authorization By The DSH Prior To Filing An Initial Petition For Unconditional Release.**

In addition to setting forth the requirements for commitment, the current version of the SVP statute provides various procedures for post-commitment review of the determination that an individual is an SVP.  In particular, the SVP statute, as amended, provides for two alternative methods for seeking discharge from commitment as an SVP, depending on whether the requested discharge is unconditional (Welf. & Inst. Code section 6605) or conditional, e.g. to CONREP or some other less restrictive alternative to a state hospital (Welf. & Inst. Code section 6608).  The two statutes  differ markedly in the procedures employed to determine whether a person committed as an SVP should be discharged.  Under section 6605, the court must conduct a show cause hearing and, if probable cause exists, set the matter for an evidentiary hearing.  (Welf. & Inst. Code section 6605, subdivision (a)(1)), at which the person is entitled to all constitutional protections afforded him at his initial commitment proceeding, including the appointment of an attorney and experts.  (Welf. & Inst. Code section 6605, subdivisions (a)(2) - (3).)  The issue then becomes whether the individual is entitled to unconditional discharge, the issue is whether "the committed person's diagnosed mental disorder remains such that he or she is a danger to the health and safety

16

of others and is likely to engage in sexually violent criminal
behavior if discharged," and the burden of proving such danger is
on the People, and must be made beyond a reasonable doubt.
(Welf. & Inst. Code section 6605, subdivision (a)(3); *Smith, supra*,
212 Cal.App.4th at p. 1402.)

By contrast, Welf. & Inst. Code section 6608 provides
considerably fewer protections for the person seeking conditional
discharge. Unlike section 6605, section 6608, subdivision (a)
provides that a petition for conditional release may be "with or
without the recommendation or concurrence of the Director of
State Hospitals." Following the filing of such petition, the trial
court must determine whether the petition is frivolous. If it is
not, the court must, after giving the required notice and
determining the individual's domicile, set the matter for hearing,
at which the court must determine whether the individual "would
be a danger to the health and safety of others in that it is likely
that he or she will engage in sexually violent criminal behavior
due to his or her diagnosed mental disorder if under supervision
and treatment in the community." (Welf. & Inst. Code section
6608, subdivisions (b)(1) - (4).) At such a hearing, the petitioner
has the burden of proof by a preponderance of the evidence,
unless the report required by Welf. & Inst. Code section 6604.9
determines that conditional release is appropriate, in which case
the burden of proof shall be on the state to show that conditional
release is not appropriate. (Welf. & Inst. Code section 6608,
subdivision (k).) If the court determines that the individual is not
likely to engage in such conduct, it shall order the individual

17

placed with an appropriate forensic conditional release program
(i.e. CONREP) operated by the state for a period of one year.
(Welf. & Inst. Code section 6608, subdivision (g).)

As a result, a defendant committed as an SVP may gain
unconditional release in one of two ways.  First, the defendant
may petition the court directly for such release, if such petition
has previously been authorized by the DSH, in which case the
petition is governed by the more friendly provisions of section
6605.  Second, and more commonly, the defendant may avail
himself of a "two step" process, by first petitioning the court for
conditional release (which is governed by section 6608) then, a
year after obtaining such release, petitioning the court for
unconditional release under section 6605.  (Slip Opinion, pp. 13-
14; *Smith, supra*, 75 Cal.App.5th at p. 337.)  Under the Court of
Appeal's interpretation of the statute, an initial petition for
unconditional release can be filed only with the authorization of
the DSH, while a petition for conditional release may be filed
with or without such authorization.  (*See* Slip Opinion, pp. 13-18;
section 6608, subdivision (a) *supra*.)

C.    **To Satisfy Due Process, A Statute Authorizing
Civil Commitment Based On Mental Illness
Must Provide An Expedient Means For
Terminating The Commitment When The
Individual Is No Longer Mentally Ill Or No
Longer Poses A Danger To Others.**

As indicated in *Smith* and in the Court of Appeal's decision
in this case, the appellate courts have interpreted the SVP
statute as providing two different procedures for obtaining

18

unconditional release, and requiring authorization by the DSH prior to filing an initial petition for such release. The issue remains, however, as to whether such procedures satisfy the basic state and federal constitutional guarantees of due process. That issue is ripe for review by this Court, in light of its constitutional magnitude and its significance in the administration of the SVP statute. Further, review is appropriate in light of authority that establishes that due process and the policies underlying the SVP statute require an expedient means of obtaining release from commitment for persons that are no longer mentally ill or dangerous, and that strongly suggests that the present requirement of DSH authorization fails to meet the expediency requirement. That is particularly so in light of the change in the SVP statute providing for an indefinite rather than a two year commitment, which materially reduced the protections afforded to defendants, on which the constitutionality of the statute depended. As a result, review of the Court of Appeal's reported decision in this case is appropriate, and should be granted by this Court.

The law is clear that civil commitment, for any purpose, constitutes a significant deprivation of liberty that requires due process protection. (*See, e.g., Addington v. Texas* (1979) 441 U.S. 418, 425 [99 S. Ct. 1804; 60 L. Ed. 2d 32].) Further, the courts have applied due process protections to commitments for insanity or mental illness, and have specifically held that persons committed on those grounds are entitled to release when they are no longer mentally ill or dangerous. (*See, e.g., Jones v. United*

*States* (1983) 463 U.S. 354, 367-68 [103 S. Ct. 3043; 77 L. Ed. 2d
694]; *Foucha v. Louisiana* (1992) 504 U.S. 71, 82-83 [112 S. Ct.
1780; 118 L. Ed. 2d 437].) In *Jones*, the Supreme Court upheld a
statutory scheme for the release of persons found not guilty by
reason of insanity which, although allocating the burden of proof
to the defendant, permitted defendants to seek relief every six
months, either with or without the authorization of the treating
agency. In doing so, the Court in *Jones* observed as follows:

> "The committed acquittee is entitled to release when he has
> recovered his sanity or is no longer dangerous. And
> because it is impossible to predict how long it will take for
> any given individual to recover – or indeed whether he ever
> will recover – Congress has chosen, as it has with respect
> to civil commitment, to leave the length of commitment
> indeterminate, *subject to periodic review of the patient's
> suitability for release.*"

*Jones*, 463 U.S. at p. 368 (citation omitted) (emphasis
added). Similarly, in *Foucha*, the Court held that it was
impermissible to indefinitely detain an individual who was not
mentally ill, but could not prove that he was not dangerous to
others. (*Id.* at pp. 82-83.)

As a result, the decisions by this Court and the United
States Supreme Court indicate that the constitutional validity of
an SVP statute depends upon the inclusion of provisions that
allow a person previously committed as an SVP to reasonably and
expediently obtain release, based upon changes in circumstances
since their commitment. In *Kansas v. Hendricks* (1997) 521 U.S.
346 [117 S.Ct. 2072, 138 L.Ed.2d 501], the United States
Supreme Court upheld the constitutionality of Kansas's SVP

statute, based largely on the fact that the Act afforded the defendant "numerous procedural and evidentiary protections" (521 U.S. at p. 354), such as placing the burden of proof on the State, providing a right to counsel and to examination by mental health professionals, and requiring a showing of dangerousness prior to commitment. (*Id.* at pp. 353, 357-58.) Those protections also included the imposition of a maximum one year commitment which, according to the Court, "demonstrates that Kansas does not intend an individual committed pursuant to the Act to remain confined any longer than he suffers from a mental abnormality rendering him unable to control his dangerousness." (*Id.* at p. 364.)

In addition, the Kansas SVP statute provided for several avenues for reviewing an individual's commitment as an SVP. In addition to requiring an annual review of the individual's condition, and permitting the agency to decide, at any time, that the confined individual's condition had changed, and then authorize the person to petition for release, the Court in *Hendricks* noted that, under the statute, *"even without the Secretary's permission, the confined person could at any time file a release petition"* which, if the court found that the State could no longer satisfy its burden under the initial commitment standard, would result in the termination of the confinement. (*See Hendricks*, 521 U.S. at p. 353 (emphasis added).) In doing so, the Court held that the statute was constitutional, because "the confinement's duration is instead linked to the stated purposes of the commitment, namely, to hold the person until his mental

21

abnormality no longer causes him to be a threat to others," and that the statute "does not intend an individual committed pursuant to the Act to remain confined any longer than he suffers from a mental abnormality rendering him unable to control his dangerousness." (*Id.* at pp. 363-64, citing *Jones, supra*, 463 U.S. at p. 368.)

*People v. McKee* (2010) 47 Cal.4th 1172 is to the same effect. In *McKee*, this Court considered the constitutionality of the SVP statute in light of the 2006 amendments, and in particular whether the change from a two year to an indefinite commitment violated principles of due process and equal protection. Although the Court rejected the challenge to the statute based on due process, it did so based on the existence of various protections afforded under the revised statute, stating that "[t]here is no question that civil commitment itself is constitutional *so long as it is accompanied by the appropriate constitutional protections*." (*McKee*, 47 Cal.4th at p. 1188, citing *Hendricks*, 521 U.S. at p. 357 (emphasis added).) This Court noted that the unconditional discharge statute (Welf. & Inst. Code section 6605, subdivision (a)) mandated the appointment of psychological experts when the Department of Mental Health authorized the petition, but the conditional discharge statute under which appellant was proceeding (Welf. & Inst. Code section 6608, subdivision (a)) did not. However, to preserve the constitutionality of the SVP statute, this Court interpreted section 6605, subdivision (a), which required an annual examination of an SVP's mental condition by a qualified expert or

22

professional, to also require the appointment of an expert in connection with a petition for conditional release, even absent the lack of a specific statutory authorization. (*McKee*, 47 Cal.4th at pp. 1192-93.)

D.    **This Court Should Grant Review To Determine Whether The "Two Step" Process For Obtaining Release From Commitment As An SVP, Including The Requirement That The DSH Authorize An Initial Petition For Unconditional Release, Constitutes A Sufficiently Expedient Means To Obtain Release, So As To Satisfy Due Process.**

The foregoing establishes that review by this Court is appropriate and necessary to determine whether the process established by the SVP statute to permit an individual to obtain unconditional discharge, as interpreted by the appellate courts, complies with both the purpose of the SVP statute and the state and federal constitutional guarantees of due process. As shown above in section A., the SVP is directed at a small group of particularly dangerous mentally disordered individuals, and is aimed at treatment rather than punishment. Further, under both the legislative purpose and the principles set forth in section C., an individual may, consistent with due process, continue to be involuntarily committed only so long as he remains mentally ill and a danger to others, and meets the other requirements under the SVP statute. As a result, the courts, including this Court in *McKee* and the United States Supreme Court in *Hendricks*, have predicated their finding that SVP statutes are constitutional on the existence of certain procedural guarantees, including those

23

affecting the review of the initial SVP determination.  In
particular, the Court in *Hendricks*, although not holding it to be
determinative, specifically cited the lack of a prior authorization
requirement prior to filing a release provision as evidence that
the Kansas statute was constitutional.  Similarly, this Court in
*McKee*, although not addressing the authorization issue,
considered the procedures involving the appointment of experts
that were contained in the same statutes at issue in this case.

   As a result, review by this Court of the present case is
consistent with and necessary to consider an ongoing issue with
respect to the SVP statute, namely whether the review and
discharge provisions of the statute comply with due process.
Moreover, that issue is particularly ripe for review here, in light
of the amendment of the SVP statute to provide for an indefinite
rather than a two year commitment.  Although the Court of
Appeal held that there need not necessarily be a "tradeoff" in
light of that amendment (Slip Opinion, pp. 25-26), it is fair to ask
whether, by providing both for an indefinite rather than a two
year commitment, and by requiring a lengthy and cumbersome
"two step" process – including prior authorization by the DSH,
the very agency responsible for the continued custody and
commitment of the individual – the SVP statute continues to
provide the kind of sufficient constitutional safeguards required
by this Court in *McKee*.

   In sum, because the present case involves a significant and
recurring issue of public importance, as well as basic
constitutional principles of due process, which require that the

24

SVP statute "ensure that the committed person does not 'remain
confined any longer than he suffers from a mental abnormality
rendering him unable to control his dangerousness.'" (*Hubbart v.
Superior Court* (1999) 19 Cal.4th 1138, 1177, quoting *Hendricks,
supra*, 521 U.S. at p. 364.)  As a result, this Court should grant
the within petition, and order review in this case.

DATED: August 29, 2022        GERALD J. MILLER
                                      Attorney at Law

                                      _____

                                      Attorney for Defendant,
                                      Appellant, and Petitioner
                                      Franklin Peyton

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 8.360(b)(1) of the California Rules of Court, the undersigned counsel states that the foregoing petition contains 4,839 words, according to the word count of the computer program used to prepare the petition.

DATED: August 29, 2022          GERALD J. MILLER
                                Attorney at Law


_____

Attorney for Defendant,
Appellant, and Petitioner
Franklin Peyton

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ) CALIFORNIA, ) )     Plaintiff and Respondent ) )     v. ) ) FRANKLIN PEYTON and ) RANDEE GRASSINI, ) )     Defendants and Appellants ) _____ ) | No. _____ Court of Appeal No. B314992 Los Angeles County Superior Court No. ZM014741 (Peyton) No. ZM011411 (Grassini) |

APPEAL FROM JUDGMENT OF THE SUPERIOR COURT
IN AND FOR THE COUNTY OF LOS ANGELES

The Honorable Robert S. Harrison, Judge Presiding

---

**PETITION FOR REVIEW OF THE PUBLISHED DECISION
OF THE CALIFORNIA COURT OF APPEAL
SECOND APPELLATE DISTRICT, DIVISION TWO
AFFIRMING JUDGMENT DENYING PETITION
FOR UNCONDITIONAL RELEASE UNDER
WELFARE AND INSTITUTIONS CODE SECTION 6605**

---

JEAN MATULIS, SBN 139615
Attorney at Law
P.O. Box 1237
Cambria, California, 93428
(805) 927-1990
Attorney for Appellant Randee Grassini
By Appointment through the
California Appellate Project

-1-

" Attachment D "

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SALUTATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

INCORPORATION BY REFERENCE . . . . . . . . . . . . . . . . . . . . 6

ISSUE PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . 6

SUMMARY OF ISSUES AND FACT . . . . . . . . . . . . . . . . . . . . 7

NECESSITY FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.    Review Is Necessary to Determine Whether State and Federal Due Process Protections Require Construction of Welfare and Institutions Code Sections 6600 et. seq. to Allow a Person to Seek Unconditional Discharge from Involuntary Commitment, With or Without the Permission of the Director of the Department of State Hospitals . . . . . . . . . 7

  A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

  B.    In Order to Maintain the Constitutionality of Commitment under Sections 6600 et seq., the Law Must Be Construed to Ensure That a Person May Petition for Unconditional Discharge Without the Prior Approval of the Director of the Department of State Hospitals . . . . . . . . . . . . . . . . . . . . . . . . . 14

  C.    Habeas Corpus is No Adequate Remedy . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF WORD COUNT . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

**Federal Cases**                                                    Page(s):

*Foucha v. Louisiana* (1992)
504 U.S. 71 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

*Jackson v. Indiana* (1972)
406 U.S. 715 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kansas v. Hendricks* (1997)
521 U.S. 346 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9, 21

*O'Connor v. Donaldson* (1975)
422 U.S. 563 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States ex rel Atty. Gen. v. Delaware and Hudson Co.*
(1909) 213 U.S. 366 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Zinemon v. Burch* (1990)
494 U.S. 113 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

**State Cases**

*City of El Cerrito v. State of California* (2015)
239 Cal.App.4th 1020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Conservatorship of Hofferber* (1980)
28 Cal.3d 161 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Gray v. Kenny* (1944)
67 Cal.App.2d 281 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Hubbart v. Superior Court* (1999)
19 Cal. 4th 1138 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*People v. Beck* (1996)
47 Cal. App. 4th 1676 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Moye* (1978)
22 Cal.3d 457 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**State Cases (cont.)** **Page(s):**

*Kraus v. Trinity Management Services, Inc.* (2000)
23 Cal.4th 116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Nadler v. Schwartzenegger* (2006)
137 Cal.App.4th 1327 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*People v. Beck* (1996)
47 Cal. App. 4th 1676 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*People v. Hudec* (2015)
60 Cal.4th 815 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*People v. McKee* (2010)
47 Cal.4th 1172 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 12

*People v. Smith* (2022)
75 Cal. App. 5th 332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Smith* (2013)
212 Cal. App. 4th 1394 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*People v. Vang* (2022)
82 Cal.App.5th 64 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## Rules and Statutes

California Rules of Court

Rule 8.500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Rule 8.504 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Penal Code Sections

1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
1026 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
1026.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
2960 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rules and Statutes (cont.)                                Page(s):

Welfare and Institutions Code Sections

6600 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
6604 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
6604.9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18
6605 . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 12, 13, 14, 17, 20, 20
6608 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12, 13
7252 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

## Constitutions

California Constitution

Cal. Const. Art. 1, section 7 . . . . . . . . . . . . . . . . . . . . . . . . 23
Cal. Const. Art. 1, section 15 . . . . . . . . . . . . . . . . . . . . . . . 23

United States Constitution, Amendment XIV . . . . . . . . 14, 16, 23

**TO THE HONORABLE TANI CANTIL-SAKAUYE , CHIEF JUSTICE, AND TO ALL THE HONORABLE JUSTICES OF THE CALIFORNIA SUPREME COURT:**

Appellant Randee Grassini respectfully requests that this Honorable Court grant review of the published decision dated July 28, 2022, 2016, of the California Court of Appeal, Second Appellate District, Division Two, affirming denial of unconditional release from involuntary commitment under Welfare and Institutions Code[1] section 6605.  (OPN.)  A Petition for Rehearing and Modification resulted in an order modifying the decision with no change in judgment, dated August 16, 2022.  (See Order Modifying Opinion (OMO).)

**INCORPORATION BY REFERENCE**

Rule 8.504 (e) authorizes incorporation by reference of a petition filed by another party in the same case.  Appellant hereby incorporates by reference the petition for review filed by co-appellant Franklin Peyton on August 30, 2022.

**ISSUE PRESENTED FOR REVIEW**

Whether a constitutional reading of provisions of the Welfare and Institutions Code mandates that a person committed under sections 6600 et seq. may petition for unconditional discharge with or without the permission of the Director ("Director") of the Department of State Hospitals ("Department").

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

## SUMMARY OF ISSUES AND FACT

Appellant acknowledges the summary of facts and procedural background contained in the opinion at pages 3-6.

## NECESSITY FOR REVIEW

I.    **Review Is Necessary to Determine Whether State and Federal Due Process Protections Require Construction of Welfare and Institutions Code Sections 6600 et. seq. to Allow a Person to Seek Unconditional Discharge from Involuntary Commitment, With or Without the Permission of the Director of the Department of State Hospitals**

### A.    Introduction

In *Kansas v. Hendricks* (1997) 521 U.S. 346, 350-365, the United States Supreme Court examined the constitutionality of a commitment scheme in the state of Kansas pertaining to sexual offenders.  Upholding the constitutionality of the statute on due process, double jeopardy and ex post facto grounds, the Court considered the "numerous procedural and evidentiary protections" afforded, which included protections in effect "once an individual was confined under the law." (*Id.* at 350, 353, 364-365.)[2]  These protections included that confined persons were afforded three avenues of review:  First, the committing court was

_____

[2] The *Hendricks* Court noted that subsequent to Hendricks' commitment, "the Kansas Legislature amended the Act in ways not relevant to this action. See, e.g., Kan. Stat. Ann. § 59–29a03 (Supp.1996) (changing notification period from 60 to 90 days); § 59–29a04 (requiring state attorney general to initiate commitment proceedings)." (*Hendricks, supra*, 521 U.S. 346, 350, fn. 1.)

obligated to conduct an annual review to determine whether continued detention was warranted. (*Hendricks, supra,* 521 U.S. at 353.)  Second, the Secretary of Social and Rehabilitation Services was permitted, at any time, to decide that the confined individual's condition had so changed that release was appropriate, and could then authorize the person to petition for release. (*Ibid.*)  Third, "*even without the Secretary's permission, the confined person could at any time file a release petition* [citation].  If the court found that the State *could no longer satisfy its burden* under the initial commitment standard, the individual could be freed from confinement." (*Ibid.;* emphasis added.)

In *Hubbart v. Superior Court* (1999) 19 Cal. 4th 1138, 1143-1147, this Court similarly upheld the constitutionality of the California Sexually Violent Predator Act (SVPA) enacted in 1995, which involved two-year renewable commitments with full right to jury trial and burden of proof upon the state beyond a reasonable doubt at each proceeding.  In the process, this Court noted that "[v]arious provisions seek to ensure that any commitment ordered under section 6604 does not continue in the event the SVP's condition materially improves." (*Id.* at 1147.) Among these provisions, this Court noted that annual mental examinations were required, and observed that

> Unless the committed person *"affirmatively waive[s]"* the right to a hearing, the court **must** annually set a "show cause hearing" to determine whether there is *"probable cause"* to believe that the person's diagnosed mental disorder has *"so changed that he or she is not a danger to the health and safety of others and is not likely to engage in sexually violent criminal behavior*

> *if discharged."* (§ 6605, subds. (b) & (c).) If the court
> so finds, the SVP is entitled to a full hearing with the
> same basic rights afforded at the  initial commitment
> proceeding. (*Id.,* subd. (d).) "The burden of proof at
> the [full] hearing shall be on the state to prove
> beyond a reasonable doubt that the committed
> person's diagnosed mental disorder remains such that
> he or she is a danger to the health and safety of
> others and is likely to engage in sexually violent
> criminal behavior if discharged." (*Ibid.*) A favorable
> verdict entitles the SVP to unconditional release and
> discharge. (*Id.,* subd. (e).)

(*Id.* at 1147-1148, emphasis added.) In considering constitutional

challenges to the law, this Court reiterated that the SVPA was

"designed to ensure that the committed person does not 'remain

confined any longer than he suffers from a mental abnormality

rendering him unable to control his dangerousness.'" (*Id.* at 1177,

citing *Kansas v. Hendricks* (1997) 521 U.S. 346, 364.)

This Court further explained:

> Although committed for two years, *the SVP is entitled
> each year to a new mental examination and to judicial
> review of the commitment to determine whether his
> condition has changed such that he no longer poses a
> danger to the health and safety of others.* (§ 6605,
> subds. (a)-(c).) Assuming there is probable cause to
> support such a determination and a full-blown
> hearing ensues, the burden rests on the state to
> prove, beyond a reasonable doubt, that the SVP
> remains mentally disordered and dangerous. (Id.,
> subd. (d).) The SVP is entitled to unconditional
> release and discharge if he prevails in this
> proceeding. (*Id.,* subd. (e).)

(*Hubbart, supra,* 19 Cal. 4th 1138, 1777.)

In *People v. McKee* (2010) 47 Cal. 4th 1172, this Court

examined the constitutionality of the Sexually Violent Predator

(SVP) Act in light of changes to the law in 2006 under Proposition 83 entitled "The Sexual Predator Punishment and Control Act: Jessica's Law" ("Prop 83"), which resulted in an indeterminate term of commitment instead of a two-year term.  In construing the constitutionality of the law in light of these changes, this Court reaffirmed that "it is still the case that an individual many not be held in civil commitment when he no longer meets the requisites of such commitment."  (*Id.* at 1193.)[3]

---

[3]In the Opinion, the Court of Appeal briefly addresses the 1995 version of the statute, stating:

> Interestingly, the 2006 version of section 6605 was a departure from the original 1995 version of the statute, which – like the current language – contemplated a two-step process: The 1995 version provided that "[n]othing in this article shall prohibit the person who has been committed as a sexually violent predator from petitioning the court for conditional release and subsequent unconditional discharge without the recommendation or concurrence of the Director of Mental Health.

(Opn. at p. 17, fn. 6, citing § 6608, subd. (a), 1995 Stats. ch. 763, §3.)  The Court then states that "[t]he voters in Proposition 83 amended this language to the language cited by petitioners, and then our Legislature in 2013 amended the section to its current verbiage" (*ibid.*), which in this Court's view excludes the right of a committed person to petition for unconditional release without the Director's approval.  The Court appears to construe the 1995 statute as having not provided a hearing on unconditional release without the recommendation or concurrence of the Director.  However, any such view would be at odds with the provisions cited by *Hubbart* which stated that upon the annual evaluation, "[u]nless the committed person 'affirmatively waive[s]' the right to a hearing, *the court must annually set a 'show cause hearing'* to determine whether there is 'probable cause' to believe that the person's diagnosed mental disorder has 'so changed that he or she is not a danger to the health and safety of others and is not likely to engage in sexually violent criminal behavior if discharged. (§ 6605, subds. (b) & (c).)'"  (*Hubbart, supra*, 19 Cal. 4th 1138, 1147-1148; emphasis added.)

-10-

Section 6608 under Proposition 83[4] stated in pertinent part: "Nothing in this article shall prohibit the person who has been committed as a sexually violent predator from petitioning the court for conditional release or an unconditional discharge without the recommendation or concurrence of the Director of Mental Health." This Court's determination that this version of the SVP law was constitutional was related to the availability of a means by which a person committed as an SVP could unilaterally petition for unconditional discharge so that he would not be civilly committed on the ground that he no longer qualified for that commitment. (*People v. McKee, supra,* 47 Cal. 4th at 1191.)[5] This Court emphasized "it is still the case that an individual may not be held in civil commitment when he or she no longer meets the requisites of such commitment." Accordingly, "[a]n SVP may be held 'as long as he is both mentally ill and dangerous, but no longer.'" (*Id.* at 1193, quoting *Foucha v. Louisiana* (1992) 504 U.S. 71, 77, U.S. Const. Amend. XIV.)

In summary, this Court stated: "[a]n SVP can only be released unconditionally or unconditionally if the DMH

_____

[4]Amended by Initiative Measure (Prop. 83, § 30, approved Nov. 7, 2006, eff. Nov. 8, 2006); (2006 Cal. Legis. Serv. Prop. 83 (Proposition 83) (WEST).)

[5] The *McKee* Court also remanded the case for further proceedings to determine whether Equal Protection required the same procedures applicable to test continued commitment of people committed under the Mentally Disordered Offenders (MDO) Law (Penal Code sections 2960 et. seq. (since renamed the Offenders with Mental Disorders (OMD) Law), and people committed as "not guilty by reason of insanity" (NGI) under Penal Code sections 1026, et. seq. (*Mckee, supra,* 47 Cal. 4th at 1209-1211.)

authorizes a petition for release an the state does not oppose it or fails to prove beyond a reasonable doubt that the individual still meets the definition of an SVP, *or if the individual, petitioning the court on his own,* is able to bear the burden of proving by a preponderance of the evidence *that he is no longer an SVP.*" (*People v. McKee, supra*, 47 Cal. 4th 1172, 1187 (emph. added.)

In *People v. Smith* (2013) 212 Cal. App. 4th 1394, a defendant sought increased protections in the process of petitioning for conditional release under section 6608, and the court applied judicial procedures and burdens of proof contained in section 6605 applicable to unconditional discharge petitions, including the automatic right to a show cause hearing, to petitions for conditional release under section 6608.  Then, the Legislature passed Senate Bill 295, to "clarify which provisions are to be used when a committed person petitions for conditional release and which provisions are to be used when a committed person petitions for unconditional discharge and would make nonsubstantive, organizational changes to the provisions." (Legis. Counsel's Dig., Sen. Bill No. 295 (2013-2014 Reg. Sess), Stats. 2013. ch. 182, Summary Dig.)

S.B. 295 took provisions pertaining to annual evaluations and petitions for conditional and unconditional release that had been contained in section 6605, and placed the annual review provisions in the newly created section 6604.9.  Among aspects of section 6604.9 pertaining to annual reviews and related matters, subdivision (d) of section 6604.9 provides: "If the State Department of State Hospitals determines that either: (1) the

person's condition has so changed that the person no longer meets the definition of a sexually violent predator and should, therefore, be considered for unconditional discharge, or (2) conditional release to a less restrictive alternative is in the best interest of the person and conditions can be imposed that adequately protect the community, the director shall authorize the person to petition the court for conditional release to a less restrictive alternative or for an unconditional discharge. The petition shall be filed with the court and served upon the prosecuting agency responsible for the initial commitment."

Section 6608, subdivision (a) states in part: "A person who has been committed as a sexually violent predator shall be permitted to petition the court for conditional release with or without the recommendation or concurrence of the Director of State Hospitals."[6] Section 6605, subdivision (a)(1) provides: "The court, upon receiving a petition for unconditional discharge, shall order a show cause hearing at which the court can consider the petition and any accompanying documentation provided by the medical director, the prosecuting attorney, or the committed person."[7] The Court of Appeal has interpreted the lack of an

---

[6]The standard for conditional release is "whether the person committed would be a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior due to his or her diagnosed mental disorder if under supervision and treatment in the community." (§6608, subd. (g).)

[7]The standard for unconditional discharge is whether "the committed person's diagnosed mental disorder has so changed that he or she is not a danger to the health and safety of others and is not likely to engage in

express declaration in the current statute that a committed
person is entitled to petition the court for unconditional discharge
"with or without the recommendation or concurrence of the
Director of State Hospitals" to mean that this right has now
vanished.  (Opn. at p. 16-17.)  In *People v. Smith* (2022) 75 Cal.
App. 5th 332, the Court of Appeal, First Appellate District 1,
Division Five, reached a similar conclusion.

Although there is not a current split of authority on this
question, the elimination of a right which has existed since the
passage of the California SVP law in 1997, including after the
passage of Proposition 83 in 2006 (two versions of the law that
were scrutinized and constitutionally approved by this Court in
*Hubbart* and *McKee*), should not slip into oblivion without the
same degree of scrutiny and constitutional rigor that this Court
has afforded the law since its inception.  Thus, this is an
important question of law that requires review under rule 8.500.

**B.**    **In Order to Maintain the Constitutionality of
Commitment under Sections 6600 et seq., the
Law Must Be Construed to Ensure That a
Person May Petition for Unconditional
Discharge Without the Prior Approval of the
Director of the Department of State Hospitals**.

The Due Process Clause contains a substantive component
that bars certain arbitrary, wrongful government actions
"regardless of the fairness of the procedures used to implement
them." (*Foucha v. Louisiana, supra,* 504 U.S. 71, 80, *Zinemon v.*

_____

sexually violent criminal behavior if discharged."  (§6605, subd. (a)(2).)

-14-

*Burch* (1990) 494 U.S. 113, 125.)  Freedom from bodily restraint
"has always been at the core of the liberty protected by the Due
Process Clause from arbitrary governmental action." (*Ibid.*)  The
Supreme Court has held that even if the initial commitment were
permissible, "it could not constitutionally continue after that
basis no longer existed." (*Id.* at 77, quoting *O'Connor v.
Donaldson* (1975) 422 U.S. 563, 575.)

Due Process requires that "the nature and duration of
commitment bear some reasonable relation to the purpose for
which the individual is committed." (*Jackson v. Indiana* (1972)
406 U.S. 715, 738, U.S. Const. Amend. XIV.)  Moreover, statutes
must be construed to preserve their constitutionality.
(*Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 175.)

In interpreting a statute, the court must presume that "the
Legislature understands the constitutional limits on its power
and intends that legislation respect those limits." (*City of El
Cerrito v. State of California* (2015) 239 Cal.App.4th 1020, 1035,
citing *Kraus v. Trinity Management Services, Inc.* (2000) 23
Cal.4th 116, 129.)  This rule flows from the assumption that the
legislative body intended to enact a valid statute. (*Ibid.*)  Where
a statute is susceptible of more than one construction, one of
which grave and doubtful constitutional questions arise and by
the other of which such questions are avoided, "the court's duty is
to adopt the latter." (*United States ex rel Atty. Gen. v. Delaware
and Hudson Co.* (1909) 213 U.S. 366, 407-408.)

Unlike the criteria for conditional release, where it is
considered whether the person, though still mentally disordered,

would not be "a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior due to his or her diagnosed mental disorder if under supervision and treatment in the community," the standard for unconditional discharge is that the "the committed person's diagnosed mental disorder has so changed that he or she is not a danger to the health and safety of others and is not likely to engage in sexually violent criminal behavior if discharged." It would be unconstitutional to continue any form of commitment of the latter individual because a person subject to involuntary commitment may be may be held and treated as long has both a mental disorder and is dangerous, but "no longer. (*Foucha v. Louisiana, supra,* 504 U.S. 71, 85; U.S. Const. Amend. XIV.)

In the Opinion, the Court of Appeal concludes that it would not be a denial of due process to require a committed person to first obtain conditional release, and then after completing a minimum of one year in outpatient supervision, to petition for unconditional discharge with or without the authorization of the Director. (Opn. at p. 20.) In doing so, the Court relies on *People v. Beck* (1996) 47 Cal. App. 4th 1676, a case that upheld a statutory prerequisite of at least a year of outpatient commitment in order to become eligible for unconditional release. (Opn. at pp. 21-22.) Rejecting appellants' attempt to distinguish *Beck* on the ground that it involves a person found not guilty by reason of insanity. (NGI) whose commitment occurs *in lieu* of a criminal sentence, this Court states that appellants are wrong because such commitments can extend beyond what would have been the

-16-

length of the insanity acquittee's criminal sentence.  (Opn. at p.
22, citing Penal Code section 1026.5, subdivision (b)(1).)

   This provision, however, supports appellants' view, because
section 1026.5 requires that once the person's NGI commitment
exceeds what would have been the maximum term of criminal
commitment, the government may not hold the person unless it
can prove to a jury beyond a reasonable doubt that the person is
still dangerous at least every two years.  Furthermore, section
1026.5 was enacted in response to a decision of the California
Supreme Court in *In re Moye* (1978) 22 Cal.3d 457, that this right
was constitutionally required.  (See *People v. Hudec* (2015) 60
Cal.4th 815, 821-822.)

   The Court of Appeal states that it "reject[s] petitioners'
argument that the current version was meant merely to
'reorganize' the Act without making any substantive changes to
the 2006 version of the Act because the changes our Legislature
enacted with the necessary two-thirds majority *did* make
substantive changes."  (Opn. at p. 10, fn. 4, emphasis in original.)
In a petition for rehearing, appellant brought to the attention of
the Court that it was the Attorney General who asserted that in
2013, "the Legislature reorganized the SVPA and moved the
provisions regarding annual reports and department
authorization for unconditional discharge petitions into section
6604.9 [citations] but left the remaining provisions setting forth
the procedures for unconditional discharge petitions in section
6605.  However, the substance of the provisions regarding the
unconditional release has not changed."  (RB at p. 16.)

Respondent then quoted the Legislative Counsel's Digest of Senate Bill No. 295, stating that it explained that the amendments to Welfare and Institutions Code[8] section 6605 and 6608, as well as the addition of section 6604.9, clarified "which provisions are to be used when a committed person petitions for conditional release and which provisions are to be used when a committed person petitions for unconditional discharge and ... make *nonsubstantive, organizational* changes to the provisions.'" (RB at p. 17, emphasis supplied by respondent.)  Respondent further stated, "[t]he Legislative history confirms that the substance of the unconditional release provisions have not changed." (RB at p. 17.)  However, respondent's position was that under the 2006 amendments, "even though a committed person may have been able to *file* a petition for unconditional release without the department's authorization, a court could not consider unconditionally releasing the person until that person was placed and completed 'an appropriate forensic conditional release program operated by the statute for one year.'" (RB at p. 19 (emphasis supplied by respondent.)

In appellant's reply brief, Grassini adopted respondent's precept that "the substance of the provision regarding the conditional release has not changed," but explained that under the 2006 provisions, a person *did* in fact have the right to be heard on a petition for unconditional release with or without the approval of the Director, and that the "nonsubstantive,

---

[8]Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.

organizational to the provisions" as described by the Legislature, had not changed this. (Grassini ARB at pp. 5-9, Legis. Counsel's Dig., Sen. Bill No. 295 (2013-2014 Reg. Sess), Stats. 2013, ch. 182, Summary Dig.) .)

The Court of Appeal acknowledges that the 2006 version of the law "undoubtedly" supported the position that a committed person could petition for conditional release or unconditional discharge without the recommendation or concurrence of the Director, but states that provisions supporting appellants' position have since been deleted or repealed. (Opn. at pp. 16-17.) In doing so, the Court dismisses the position of the Legislative Counsel that S.B. 295 was meant to make "nonsubstantive, organizational changes to the provisions," stating that the Legislative Counsel's Digest is "not part of the law and cannot alter the scope, meaning of the intent of the bill itself [citation]" and that Digest's characterization of the 2013 amendments "conflicts with the text of the Act," the Court stated it would "give effect to the Act's text over the Digest's commentary." (Order Modifying Opinion and Denying Rehearing at p. 2 ("OMO").)

Significantly, in *People v. Vang* (2022) 82 Cal.App.5th 64, quoted by the Court of Appeal (OMO at p. 2), the court also states that the "Legislative Counsel's Digest can be a valuable tool in assessing legislative intent . . . ." Use of the Digest to evaluate the legislative intent in the instant case reveals that there is no conflict with the text of the Act, because it does not expressly prohibit a person from filing a petition for conditional release without the pre-authorization of the Director of the Department

-19-

of State Hospitals.  In the absence of such a prohibition, section 6605, subdivision (a)(1), which provides that "the court, upon receiving a petition for unconditional discharge, shall order a show cause hearing at which the court can consider the petition and any accompanying documentation provided by the medical director, the prosecutor, or the committed person," must be construed as meaning exactly what it says.

If the statute were changed to eliminate the right of a person to petition for unconditional discharge without the recommendation of DHS, it would constitute a change in substance, not mere organization.  (ARB at pp. 6-7.)  To interpret S.B. 295 as effecting a repeal of a person's right to petition for unconditional discharge without the approval of the Director, would suggest that the Legislature and its Counsel participated in a cynical shell game, presenting a bill seeking nonsubstantive changes, with the intention of eliminating a long-existing, substantive right in the shuffle.  This would be untenable, because "[c]ourts must presume that the Legislature acted in good faith." (*Nadler v. Schwartzenegger* (2006) 137 Cal.App.4th 1327, 1334, fn. 2.)

### C.    Habeas Corpus is No Adequate Remedy

The Court of Appeal also concludes that appellants' rights are adequately protected by section 7250, which provides:

> Any person who has been committed is entitled to a writ of habeas corpus, upon a proper application made by the State Department of State Hospitals or the State Department of Developmental Services, by that person, or by a relative or friend in his or her behalf to the judge of the superior court of the county

in which the hospital is located, or if the person has been found incompetent to stand trial and has been committed pursuant to Chapter 6 (commencing with Section 1367) of Title 10 of Part 2 of the Penal Code, judicial review shall be in the superior court for the county that determined the question of the mental competence of the person. All documents requested by the court in the county of confinement shall be forwarded from the county of commitment to the court. Upon the return of the writ, the truth of the allegations under which he or she was committed shall be inquired into and determined. The medical history of the person as it appears in the clinical records shall be given in evidence, and the superintendent in charge of the state hospital wherein the person is held in custody and any other person who has knowledge of the facts shall be sworn and shall testify relative to the mental condition of the person.

Unlike section 6605, which expressly provides for the appointment of counsel, access to an expert, and addresses burden of proof, the above statute simply provides that upon return of the writ, "the medical history of the person as it appears in the clinical records shall be given in evidence" and that the superintendent of the state hospital and any other person who has knowledge of the facts "shall testify relative to the mental condition of the person." The Supreme Court in *Kansas v. Hendricks, supra,* 521 U.S. at 353, in the course of upholding the Kansas SVP law, observed that once committed "even without the Secretary's permission, the confined person could at any time file a release petition [citation]. If the court found that the State *could no longer satisfy its burden under the initial commitment standard,* the individual could be freed from confinement." *(Ibid.;*

emphasis added.)  Unless the habeas corpus proceeding is construed as requiring the protections recognized under the statute by *McKee* including the right to counsel and the right to an expert, and the State is held to its proper burden as recognized in *Hendricks*, it cannot satisfy due process.  (Cal. Const. Art. 1 §§7, 15; U.S. Constitution, Amend. XIV.)

The Court of Appeal rejects this argument, comparing section 7252 to the petition for writ of habeas corpus for convicted felons.  (Opn. at p. 27.)  The Court states:

> A convicted felon petitioning for habeas corpus relief from his conviction is not denied procedural due process merely because the substantive standards and procedures applicable when he seeks release through a habeas corpus petition (where the felon is entitled to appointed counsel only upon making a prima facie case for relief, where he bears the burden of showing that his confinement is unlawful, and where he presents his claim to a judge) are less favorable than those applicable at the trial where he was convicted (where he is entitled to appointed counsel during the entire procedure, where the State bears the burden of establishing his guilt beyond a reasonable doubt, and where the trier of fact is a jury).  The same principle applies here, and thus obligates us to reject petitioner's argument that section 7250 is inadequate merely because it does not employ the same procedures as section 6605, which, as noted above, are identical to the procedures used to impose SVP status in the first place.

(Opn. at p. 27.)  The Court of Appeal also states that section 7250, like the writ of habeas corpus generally, "was meant to operate as a bona fide safety valve available when new evidence showing that the SVP is no longer a "sexually violent predator"

"completely undermines" either the initial finding of SVP status or the Department's most recent annual evaluation [citations]." (Opn. at p. 27.)  This is not an apt comparison.

A habeas corpus petition filed by a prisoner convicted of a felony is unlike a petition filed by a person subject to indefinite mental health commitment, because the imprisonment is based upon an adjudication of a static event in which a crime or crimes were committed, and the length of confinement is set accordingly. In contrast, for a person subject to civil commitment, Due Process requires that "the nature and duration of [civil] commitment bear some reasonable relation to the purpose for which the individual is committed." (*Jackson v. Indiana, supra*, 406 U.S. 715, 738. U.S. Const. Amend. XIV.)  Furthermore, an annual evaluation by the very entity confining the person is not an adjudication of a person's current status, and therefore must not be imputed with the presumption of correctness implied by the Court of Appeal. (See *Kansas v. Hendricks, supra*, 521 U.S. at 353 [noting that once committed "even without the Secretary's permission, the confined person could at any time file a release petition" with the burden on the State].)  Section 7252 is not an adequate remedy.

The Legislature must be deemed to have "acted with integrity and with a just desire to keep within the restrictions laid by the Constitution upon their actions." (*Gray v. Kenny* (1944) 67 Cal.App.2d 281, 287.)  Section 6605, must be construed to continue providing the necessary protections, as recognized in *Hubbart* and *McKee*, in order to maintain the constitutionality of the law, and review should be granted by this Honorable Court.

-23-

## CONCLUSION

For all the reasons stated above, the petition for review should be granted.

Dated: August 31, 2022

Respectfully submitted,

JEAN MATULIS
Attorney for Appellant
RANDEE GRASSINI

## CERTIFICATE OF WORD COUNT

I hereby certify that the Petition for Review contains 4895 words according to the word count of the WordPerfect computer program used to prepare the document.

Dated: August 31, 2022

JEAN MATULIS
Attorney for Appellant

Court of Appeal, Second Appellate District, Division Two - No. B314992, B314995

S276169

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

SUPREME COURT
F I L E D

THE PEOPLE, Plaintiff and Respondent,

OCT 1 9 2022

v.

Jorge Navarrete Clerk

FRANKLIN PEYTON, Defendant and Appellant.

Deputy

THE PEOPLE, Plaintiff and Respondent,

v.

RANDEE GRASSINI, Defendant and Appellant.

The petitions for review are denied.

Corrigan, J., was absent and did not participate.

CANTIL-SAKAUYE
*Chief Justice*

"Attachment E"

Court of Appeal, Second Appellate District, Division Two - No. B314992, B314995

S276169

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

SUPREME COURT
FILED

THE PEOPLE, Plaintiff and Respondent,

OCT 1 9 2022

v.

Jorge Navarrete Clerk

FRANKLIN PEYTON, Defendant and Appellant.

Deputy

THE PEOPLE, Plaintiff and Respondent,

v.

RANDEE GRASSINI, Defendant and Appellant.

The petitions for review are denied.

Corrigan, J., was absent and did not participate.

CANTIL-SAKAUYE

*Chief Justice*

" Attachment F "



ORIGINAL

US POSTAGE
quadient
FIRST-CLASS MAIL
IMI
$015.60
052626/2023 ZIP 90210
043M31225448

RECEIVED
CLERK U.S. DISTRICT COURT

MAY 30 2023

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

Clerk of the United States District Court
for the Central District of California
United States Courthouse
ATTN: INTAKE / Docket Section
255 East Temple Street, Suite TS-134
Los Angeles, Calif. 90012

Randee Grossini
Co#ccc0238-6 Unit 10
P.O. Box 5003
Coalinga, CA 93210

Legal Documents
Enclosed
original

CERTIFIED MAIL

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE



Rondal Hamri.
CDC#00238-6 unit-10
P.O. Box 5003
Calipa, CA 93241

Legal
Documents
Copies enclosed

Clerk of the United States District Ct.
for the Central District of Calif.
United States Courthouse
Attn: INTAKE/Docket Section
255 East Temple St. Suite 75-135
L.A CA 9012

2 of 3